## FIRST NAT. BANK OF WESLACO v. PATTY.

### No. 9123.

Court of Civil Appeals of Texas. San Antonio.

June 14, 1933.

Rehearing Denied July 26, 1933.

S. N. McWhorter, of Weslaco, and West & Hightower, of Brownsville, for appellant.

Kelley, Looney & Norvell, of Edinburg, for appellee.

SMITH, Justice.

For several years appellee, Austin Patty, has operated a grocery store in Weslaco with the assistance of his son, Richard, now twenty-two years old. It seems that neither of them knew much about the art of bookkeeping and kept no regular set of books. In this situation appellee employed one Mrs. Christine Reid to audit the affairs and open a set of books for the business, and to teach the son, Richard, to keep the books. Mrs. Reid entered upon her duties on January 3, 1932, and at once assumed charge of the bookkeeping, including the firm's account with appellant, the First National Bank of Weslaco. Within the first week she began a series of forgeries of checks drawn against appellee's account at the bank, signing appellee's name to the checks. Twenty-one such checks were drawn during a period of four months, and the proceeds thereof, aggregating $971, were collected and appropriated by Mrs. Reid. Upon a jury trial

appellee recovered said amount from the bank, which has appealed.

It appears that appellee's deposits in the bank were usually made in person by his son, except that occasionally this office was performed by Mrs. Reid. From the beginning of her employment, however, the latter in person obtained from the bank' the monthly statements of appellee's account and the canceled checks covered by those statements. She would take the statement and checks to the store, where she and Richard Patty together compared and filed them away. She always wrote the forged checks upon blanks abstracted from the firm's check book, and before comparing the statements with the canceled checks she abstracted and destroyed the forged instruments and so concealed them from appellee and his son. And in checking over the statement with the books of the firm she manipulated the calls and entries, thereby completing the delusion of father and son, who, suspecting nothing, made no investigation or check or comparison which, if made, would have instantly disclosed the deception so easily practiced upon them. It was shown that appellee and his son at all times had access to the bank statements and firm books disclosing the forgeries, and that they could easily have discovered the fraud. All the bank statements bore on their faces in bold type the familiar indorsement: "Please examine at once. If no error is reported in ten days, the amount will be considered as correct." Appellee and his son trusted Mrs. Reid completely, however, although a stranger to them when appellee employed her. They put her forward in the firm's dealings with the bank, thereby holding her out to the bank as their authorized representative, at least for the purpose, sometimes, of making deposits, and always of receiving the firm's statements and canceled checks. Her forgeries were finally discovered by appellant in this way: She forged a check upon another bank and cashed it at appellant's bank, which presented it to the drawee, which refused to pay it because of "insufficient funds." Appellant thereupon called the dishonored paper to the attention of appellee, who detected the forgery, and this led to an investigation which disclosed the prior forgeries. Mrs. Reid, admitting her forgeries, was discharged by appellee, was indicted by the grand jury, and, pending her trial thereon, was the principal witness, as well, apparently, as a very willing witness, for appellee upon the trial of this cause.

Appellant defended this suit upon the obvious defense of estoppel, alleging and proving that if appellee had promptly repudiated the first forged checks appellant not only would not have paid any more of them, but would have collected the amounts already paid, thereby protecting the bank, as well as appellee, from any loss; that by acquiescing in the payment of the first of the forged instruments appellee thereby led appellant into paying those that followed and is now estopped to deny the forger's authority to bind him.

The jury found that appellee was not negligent in failing, prior to February 10, 1932, to examine his canceled checks, statements, and passbook, and discover the forgeries theretofore committed and thereby disclosed, but that he was negligent in not discovering and reporting to the bank the forgeries thereafter occurring, in February, March, and April. But the jury thereupon found, further, that this negligence of appellee was not the proximate cause of the losses charged to his account, after said February 10, on account of the forgeries. The jury also found that appellant negligently failed to detect the forgeries, and that such negligence proximately caused the resulting losses. Appellant does not assign error, specifically, against those findings, which therefore are binding upon this court. The controlling finding, as will be seen, is that appellant was guilty of negligence, which proximately caused the loss, in failing to detect the forgeries. We adopt that finding as the basis of this opinion, which must rest upon the rules now to be stated.

It is the settled general rule that as between a bank and its depositors the bank may pay out the money of the depositor only upon his genuine order. Specifically, if such payment be made upon a forged check, the bank is primarily liable to the depositor therefor. This rule is elemental.

It is the duty of the bank to render to the depositor periodical statements of the depositor's account and return to him his passbook and the canceled checks covered by the statement, whereupon' it becomes the duty of the depositor to examine the statement, canceled checks, and passbook, within a reasonable time, and report to the bank such errors or forgeries, if any, as may be evidenced by those documents. If he negligently fails to make such examination and report within a reasonable time, the account so rendered becomes an account stated between the bank and him, and if the bank is prejudiced by this negligence, the depositor is thereupon estopped to question the accuracy of the account so stated, or the genuineness of the forged items therein. Such is the general rule. 1 R. C. L. p. 213, § 12; 3 R. C. L. pp. 538, 539, §§ 167, 168; 7 C. J. 687; 1 C. J. 711; Leather Manufacturers' Nat. Bank v. Morgan, 117 U. S. 96, 6 S. Ct. 657, 29 L. Ed. 811; Weinstein v. Bank, 69 Tex. 38, 6 S. W. 171, 5 Am. St. Rep. 23; Fifth Nat. Bank v. Bank, 92 Tex. 436, 49 S. W. 368; Iron City Nat. Bank v. Bank, 31 Tex. Civ. App. 308, 71 S. W. 612, 613;

Calvin Coal Co. v. Bank (Tex. Civ. App.) 286 S. W. 901; Union Tool Co. v. Bank, 192 Cal. 40, 218 P. 424, 28 A. L. R. 1417, annotation; Glassell Development Co. v. Bank, 191 Cal. 375, 216 P. 1012, 28 A. L. R. 1427; Prudential Ins. Co. v. Bank, 227 N. Y. 510, 125 N. E. 824, 15 A. L. R. 146, annotation.

■■ But, under the authorities cited, as well as others, that general rule is subject to this exception, that if the bank is itself negligent in failing to detect the forgery and in consequence of such negligence pays the money out of the depositor's account it is liable to the depositor for the amount thereof, notwithstanding the negligence of the depositor in failing to discover and denounce the forgery within a reasonable time. In short, the defense of estoppel is not available to the bank in the face of its own negligence. 3 R. C. L. p. 538, § 168; Bank v. Morgan, supra; Dev. Co. v. Bank, supra; Ins. Co. v. Bank, supra; Southwest Nat. Bank v. Underwood, 120 Tex. 83, 36 S.W.(2d) 141; Coleman Drilling Co. v. Bank (Tex. Civ. App.) 252 S. W. 215. That rule must prevail in this case, in view of the finding of the jury that the negligence of appellant in failing to detect the forgery was the proximate cause of the resulting loss.

■ Appellant complains of the overruling of its general demurrer, and its motion for directed verdict; but we have concluded there is no substantial merit in those complaints and therefore overrule the propositions in which they are presented. The trial court did not err in refusing to instruct the jury as specially requested by appellant. The requested charge was in effect a general charge upon the law of the case, which is prohibited in cases submitted upon special issues.

Appellant has ably and earnestly presented its appeal, but no reversible error is presented, and the judgment must be affirmed.