**KOENIG v. MARTI et al.**

No. 13512.

Court of Civil Appeals of Texas. Fort Worth.

March 5, 1937.

Rehearing Denied April 16, 1937.

1024

R. C. Fuller, M. Kleberg, and Greines & Greines, all of Fort Worth, for appellant.

A. B. Curtis and J. E. Dycus, both of Fort Worth, for appellees.

SPEER, Justice.

On July 8, 1925, C. C. Evatt and G. W. Maeyers recovered a judgment against Theo Koenig and John L. Poulter, in the county court at law No. 2, Tarrant county, Tex., for the sum of $257, with interest thereon from its date at the rate of 10 per cent. per annum and for costs of suit.

On July 5, 1935, Mrs. Retta Marti, joined pro forma by her husband, J. M. Marti, instituted this suit in the county court at law No. 1, of Tarrant county, Tex., against Theo Koenig and John L. Poulter for $555.55, alleging that she, the said Retta Marti, had, for a valuable consideration, purchased said judgment theretofore rendered against the defendants, and procured written assignments thereof. Her petition sufficiently describes the judgment. She averred the judgment had not been paid in whole or in part, and that it was still in full force and effect; that it had never been reversed or otherwise vacated. That she was "the legal and equitable owner and holder of the indebtedness accruing by virtue of said judgment, and because thereof the defendants were justly indebted and obligated, jointly and severally to pay to plaintiff the sum of $555.55, with interest thereon from the date of the filing of the petition at the rate provided in the judgment."

On the same date of the filing of plaintiff's petition, she caused to be issued and executed a writ of attachment upon property of the defendant Koenig. The return of the officer shows that he seized under the writ lots 1, 2, 3, 4, 5, 6, 7, and 8, all in block "L" of the Fields Hillside addition to the city of Fort Worth, Tex.

Defendant Koenig filed a plea to the jurisdiction of the court in which he contended the action was in effect one to revive a dormant judgment, and should have been instituted in the county court at law No. 2, in which the judgment was rendered, and that the court in which this action was then pending had no jurisdiction thereof.

Thereafter, on October 11, 1935, Mrs. Retta Marti, joined by her husband, J. M. Marti, by leave of court, filed a first amended petition in lieu of their petition filed on July 5, 1935, similar in all respects to the original petition, except that the husband is made a party plaintiff and explanatory facts are set out as to the nature of the indebtedness upon which the original judgment was rendered, repeating the former allegations that "heretofore by instruments in writing duly executed by the said C. C. Evatt and G. W. Maeyers for a valuable consideration to them paid by plaintiff, Mrs. Retta Marti," and added in the new plea "out of her own separate funds and estate, sold, transferred and assigned said judgment together with all interest and costs due thereon unto plaintiff, Mrs. Retta Marti, as her separate property," who is now the legal and equitable owner and holder of said indebtedness accruing by virtue of said judgment, "as her separate property." Prayer was the same as in the original petition.

On October 22, 1936, defendant Koenig filed his amended plea in abatement to the sufficiency of the application for the writ of attachment issued prior to the filing of plaintiffs' amended petition urging, among other things, that the attachment proceedings were void for the reason plaintiffs' original petition and asserted cause of action were insufficient to support the writ in that the petition was by Mrs. Marti alone, she being a married woman. The court sustained the plea by a judgment reciting "for the reasons set out therein." The plaintiffs excepted to the action of the court.

Defendant Poulter filed a general demurrer, general denial, and certain special defenses which are unnecessary to set out here.

Defendant Koenig answered by general denial and specially that the plaintiff was not the owner of the judgment sued on, either at the time of filing her original or amended petitions, but that the codefendant John L. Poulter was in fact the real owner thereof; that the amended petition set up a new cause of action; and that on October 11, 1935, when the amended petition was filed, the judgment was more than ten years old and barred by the statutes of limitation.

The case was tried to a jury, and upon concluding the testimony, defendant Koenig presented and requested the giving of a peremptory instruction to the effect that Mrs. Retta Marti was not the legal holder and owner of the judgment sued on; this being refused by the court, Koenig re-

quested the submission of the following special issue:

"Do you find from a preponderance of the evidence that the plaintiff Mrs. Retta Marti is the legal owner and holder of the judgment sued upon in this case?"

The requested issue was refused, whereupon the court instructed the jury as follows:

"You are instructed to find that the plaintiff Mrs. Retta Marti is the legal owner and holder of the judgment sued upon in this case. The form of your verdict will be as set out below. * * * We the jury find that the plaintiff Mrs. Retta Marti is the legal owner and holder of the judgment sued upon in this case."

The court entered judgment quashing the writ of attachment theretofore issued and taxed the cost of that branch of the case against the plaintiff, and found that plaintiff acquired the judgment by an assignment from each of the original owners, the one from C. C. Evatt, on July 5, 1935, and the other from G. W. Maeyers, on the 13th day of July, 1935; that the judgment was barred by limitation when she acquired the Maeyers' assignment and therefore found in favor of plaintiff for $294.34 as one-half of the judgment sued on, together with all costs except that incurred by the attachment proceedings. Theo Koenig and the plaintiff excepted to the judgment and both gave notice of appeal. Koenig has perfected his appeal and presented proper assignments of error, while plaintiff has presented cross-assignments.

The propositions presented by appellant (defendant Koenig below) may be discussed under three general heads, they being (1) a suit on judgment such as the one at bar, is the same as an action to revive a dormant judgment and must be brought in the court where the original judgment was rendered. (2) Suit by a married woman alone for recovery of community property, is a nullity and will not toll the statutes of limitation. And (3) there was such a conflict in the testimony as to the ownership of the judgment sued on as to make an issue of fact for determination by the jury, and a refusal to submit such an issue constituted error.

Appellee (plaintiff below) presents two cross-assignments of error to the effect that (a) the court erred in holding one-half of the judgment owned by appellee was barred by limitation and (b) the court

erred in sustaining appellant's plea in abatement to the attachment proceedings.

We cannot agree with appellant's contention that this is a suit, only, to revive a dormant judgment and that the action should have been brought in the same court where the original judgment was rendered. If it had been an action on scire facias to revive a dormant judgment and for execution thereon, then the county court at law No. 2 of Tarrant county would have had the exclusive jurisdiction of the case, but it being a suit to recover for debt due on a dormant judgment, then any court having jurisdiction of the amount in controversy and of the parties may determine the issue.

Article 5532, Rev.Civ.Statutes, provides that where execution has not issued within twelve months after the rendition of a judgment, it may be revived in either of two ways, that is, by scire facias or by action of debt thereon. These remedies must be enforced within ten years from the date of the judgment. It may be said that either remedy is one for revival (Ater v. Knight [Tex.Civ.App.] 218 S.W. 648), but clearly the appellee by her petition chose to bring suit for debt, and the county court at law No. 1, of Tarrant county, had jurisdiction.

It is said in 26 Tex.Jur. p. 479, § 620:

"An action for debt brought on a judgment, in contradistinction to a scire facias proceeding, may be filed in any court having jurisdiction of the subject matter and person of the defendant; it is not necessary to bring it in the court which rendered the judgment," citing Burge v. Broussard (Tex.Civ.App.) 258 S.W. 502, writ of error refused.

Appellant is very insistent upon his propositions grouped by us in No. 2 above, claiming the suit instituted by appellee, joined pro forma by her husband, was a nullity and did not toll limitation on the judgment prior to the filing of her amended pleadings, in which her husband joined, after the judgment was barred. Many cases are cited in support of his contention. We have carefully read these authorities and do not consider them in point under the condition of the record before us. It is well settled, we think, and the authorities cited by appellant so hold, that a married woman cannot prosecute a suit for the recovery of either her separate or community property without proper allegations show-

ing her right to do so. But it does not follow that she could not maintain a suit involving her rights in property under any conditions. Speer's Marital Rights, §§ 501 and 510.

The distinction between the cases cited by appellant and the one before us lies in the fact that here the appellee by amendment met the defects in her original pleadings by making her husband a coplaintiff with her, under which amendment she prosecuted her suit. The amendment, however, was filed after the bar of limitation was complete, and it is contended that the amendment constituted a new cause of action and that the original petition, because of its defects, did not toll the statute.

■ It must be conceded that a married woman may, under a proper showing, file and prosecute a suit for the protection and recovery of her property. Then if she attempts to assert her legal rights in this way and files a pleading which is incomplete or otherwise insufficient, rendering it subject to demurrer, she, like any other litigant, may amend and remedy the defects.

On this point it is said in 23 Tex.Jur. p. 338, § 291: "Where a married woman seeks to maintain her suit alone she must allege that the husband fails and refuses to bring the suit or to join with her. * * * This necessary allegation may be supplied by amendment." The text cites San Antonio v. Wildenstein, 49 Tex.Civ.App. 514, 109 S.W. 231, 233, in which a writ of error was refused; Jacobs v. Cunningham, 32 Tex. 774.

In the case of Jacobs v. Cunningham, supra, the Supreme Court said: "In instituting suit by the wife, it would be most regular to aver in the original petition the cause of such failure or neglect [of the husband to join or file suit]. But, with leave of the court, this averment may be made in the amended petition, and the cause proceed to trial."

The case of San Antonio v. Wildenstein, supra, was filed in 1902 by a married woman without joinder of her husband or other necessary allegations as to why he did not join and by amended pleadings filed in 1907 the objection was raised that she could not thus maintain the suit; on the same day of the filing of defendant's exception, the plaintiff filed a supplemental petition meeting the objection, and the court said: "It was the proper mode of pleading, as prescribed by rule 5 of the district court (67 S.W. xx), for plaintiff to reply to it by a supplemental petition. Standifer v. Bond Hardware Co. (Tex.Civ. App.) 94 S.W. 144."

Based upon the authorities from which we have quoted, it is said in Speer's Marital Rights, § 455 ([2d Ed.], the only one to which we have access): "It is not fatal error to the maintenance of her suit that such allegations (husband's failure to bring suit or join her) are not contained in her original pleadings; they may be supplied by amendment." See, also, Texas & P. Ry. Co. v. Fuller, 13 Tex.Civ.App. 151, 36 S.W. 319 (writ of error denied).

■ From the authorities cited, it must be said the wife may amend her defective pleadings so as to supply the essential elements here, found lacking in appellee's petition. In the beginning of this opinion, we recited those matters contained in the amended pleading which did not appear in the original, and from that we conclude there was no new cause of action set up. The suit originated as one for debt evidenced by a judgment, alleged by plaintiff to be owned by her. The amendment could not fairly say her husband had refused to join in the suit or that he had declined to prosecute such a suit, for he joined in the amendment. The additional allegations were statements of facts claimed by appellee to disclose she was the rightful owner of the judgment as her separate property. These additions did not render the amendment a new cause of action.

These conclusions are supported by the statement found in 28 Tex.Jur. pp. 207, 208, § 114, which reads:

"A mere change in the capacity in which the plaintiff brings a suit, the substantive facts being the same, is not the institution of a new suit within the meaning of the statute of limitations, even though the plaintiff could not recover in the capacity assumed in the original petition. Thus a new cause of action, upon which limitation runs up to the time that it is asserted, is not stated by an amendment * * * which changes a pro forma party plaintiff to a real plaintiff."

■ It is a well-settled rule of law in this state that a petition, though subject to general demurrer, will toll the statute of limitation between the time it is filed and the date of an amendment curing the irregularities and legal defects therein. A

summary of this rule is laid down in 28 Tex.Jur. p. 190, § 97, where it is said:

"The rule established in Texas is that the commencement of a suit by a party in whose favor a cause of action exists stays the running of the statutes of limitation, regardless of how defectively the cause may be presented in the petition. A fortiori, the running of the statute is interrupted by the filing of a petition which is so defective as to be subject to a general demurrer, provided it is filed before the expiration of the statutory period of limitation and is based upon a proper cause of action described with sufficient certainty to apprise the defendant of its nature. In such a case the petition may be amended, and the amendment will relate back to the time of the filing of the original pleading."

To the same effect are the following authorities: Howard v. Windom, 86 Tex. 560, 26 S.W. 483; Houston & T. C. Ry. Co. v. Fife (Tex.Civ.App.) 147 S.W. 1181 (writ refused); Smith v. Tipps (Tex.Com. App.) 229 S.W. 307; Fuller v. El Paso Times Co. (Tex.Com.App.) 236 S.W. 455; Mann v. Mitchell (Tex.Civ.App.) 241 S.W. 715 (writ dismissed); Leifeste v. Stokes (Tex.Civ.App.) 45 S.W.(2d) 1006.

We think there is no merit in the contention of appellant in this record and the assignments raising the question are overruled.

■ This brings us to a consideration of appellant's assignments of error, which we have grouped in class No. 3 above, that is, where appellant pleaded as a defense to appellee's suit that she was not the real owner of the judgment sued on, and there is a conflict in the testimony, the issue is one for the jury, and the court erred in refusing to submit his requested issue raising the point, and in giving the peremptory instruction for the appellee. The soundness of the general rule announced need not be discussed, it is too well settled to require comment. We need only to determine if there was sufficient evidence of probative force and effect offered to require the submission of the question to the jury.

■ The record discloses that appellee, Mrs. Retta Marti, is a sister of defendant John L. Poulter. Appellant has rather vigorously insisted, both upon the trial and by his brief here, that there was collusion between appellee and defendant Poulter, both in the purchase of the judgment and in the prosecution of appellee's suit. We have searched the record carefully and do not find anything more than a relation that would and should naturally exist between brother and sister, or even in a suit between persons not so related when a defendant realizes a plaintiff's suit is well founded.

The facts as disclosed, in brief, show there was an outstanding judgment against Koenig and Poulter in favor of C. C. Evatt and G. W. Maeyers; that it was nearly ten years old, unsatisfied, and would soon become barred by limitation. Poulter claimed he had information that the judgment creditors would soon file a suit to revive the judgment and communicated with Evatt and Maeyers with a view to being relieved from liability by the payment of a nominal sum; finding that he could do so, and being without funds himself, he went to his sister (appellee) and procured $100 from her with which to purchase the judgment and have it assigned to her. It was Poulter's contention that he was an accommodation signer of a note for his codefendant Koenig, out of which note the judgment grew, and if any payment was ever made, Koenig should make it. This contention of Poulter's was denied by Koenig. Poulter said he procured from his sister (appellee) $100 of her money and paid it out in part for the agreed price at which the judgment creditors had expressed a willingness to accept, and for court costs; that he paid to Evatt $35 and to Maeyers $25, and took written assignments of their respective interest in the judgment to appellee. Mrs. Marti testified that she had accumulated some money by teaching school prior to her marriage and, by agreement with her husband, these funds had at all times been kept separate and apart from community funds or those of the husband and that she let her brother have the money from her separate funds; that she furnished the $100 to her brother for the purpose of buying this judgment; that she bought the judgment for herself and not for her brother; that he had no interest in it nor did her husband or any other person; that it belonged to her and that no part of it had ever been paid; that she told her brother she would not put more than $100 into it. She testified that if she got a judgment in the case she was going to collect it the best way she could.

The written assignments from Evatt and Maeyers, respectively, were introduced

in evidence; these instruments assigned the judgment to appellee; the one from Evatt was dated July 5, 1935, and the one from Maeyers bore date of July 13, 1935, and appeared to have been executed in Bailey county, Tex.

Each of the assignors testified in the case. Evatt said Poulter told him appellee was buying the judgment and he knew he was making the assignment to her. Maeyers testified by deposition and did not remember to whom the assignment was made but that his negotiations were with Poulter and that he made the assignment and delivered it to a local bank with draft attached for $25, with instructions to deliver the assignment when the draft was paid.

Later in the trial, appellee was recalled to the stand and upon cross examination was asked this question:

"Q. Mrs. Marti, should you recover any judgment in this cause, how much of this judgment is Mr. Poulter going to get? A. I told you this morning, I hadn't made any trade on that."

Following the question and answer, an objection was made by counsel, and after considerable argument the court ruled and this question was asked and answered:

"Q. The question is, should you recover any judgment, would you get any part of the judgment? A. I told you this morning Mr. Kleberg, it is Mr. Koenig's debt.

"Q. Wait a minute. Say either yes or no. A. Well, no."

The quoted part of appellee's testimony is referred to many times by appellant in his brief and it is earnestly insisted by him that since he made the special defense in his answer to appellee's alleged cause of action, that she was not the legal owner and holder of the judgment sued on, she should not be permitted to recover, and with this conflict in the testimony, the issue requested by him should have been given; that it was error for the court to refuse it and give a peremptory instruction for the appellee to the effect that she was the owner of the judgment sued on.

It cannot be denied that appellant was entitled to the submission of issues raising any affirmative defense to appellee's alleged cause of action when competent testimony was offered in support of the defense pleaded. We have carefully studied the pleadings of the parties, and every phase of the testimony that could be construed to be in support of each. Several parts of the testimony are claimed by appellant to show circumstances supporting his contention that appellee was not the owner of the judgment, but having examined them all carefully, we think it manifest that his most earnest insistence is upon that part of the testimony of appellee which we have quoted.

The fact that defendant Poulter contended throughout the trial that the judgment sued on was the debt of his codefendant Koenig, lends strength to the appellee's contention that his testimony did not indicate that he had any interest in the judgment, but that he was only trying to save himself from liability thereon, but that by his acts he would enable appellee as assignee to recover thereon after it was purchased by her. There are no circumstances disclosed by the testimony tending to show Poulter did not procure the money from his sister (appellee) with which to purchase the judgment for her. Poulter testified positively to that fact. The appellee gave in detail the circumstances under which she furnished the money to Poulter, out of her separate funds for that purpose; that no other person had any interest in it and that if she procured a judgment in the case she expected to collect it the best way she could. Evatt testified Poulter told him his sister (appellee) was buying the judgment and that he made the written assignment to her upon receipt of the amount he had agreed to accept. Maeyers testified by deposition that he did not remember to whom he made the assignment, but that one was made by him and a draft attached for the amount agreed upon and was sent through the bank at Muleshoe to Fort Worth for payment of the draft and delivery of the assignment. The two assignments were to appellee and both were in evidence. They were plain and unambiguous and no controversy is raised about their contents.

It will be observed by the testimony of appellee, relied upon by appellant to raise a doubt of appellee's ownership of the judgment that the first question by counsel was an inquiry as to what part of the judgment to be recovered by her would John L. Poulter receive, she answered: "I told you this morning I hadn't made any trade on that." The answer was not responsive and indicated one of three things: That is, that she had made no trade with Poulter for him to receive any part of it,

or that she did not understand the question or that she was evading answering it. This was all followed by objection and argument of counsel and a ruling of the court when a second question was propounded in this language: "The question is, should you recover any judgment would you get any part of the judgment?" It will be observed the latter question was not what was previously asked but virtually the converse of it. Again her answer was not responsive, and upon the insistence of counsel that she say "either yes or no," her answer was, "Well, no."

■ It is insisted by appellee in her brief that there is an error in transcribing the court reporter's notes and that the questions and answers are not presented as they were asked and answered, and that for this reason her counsel had declined to approve the statement of facts, but of this we can take no cognizance. The court has approved the statement of facts as transcribed by the reporter and we must treat it as correct. Our attention is called to many interlineations made after the reporter's notes were transcribed, some of which change the meaning of the answers, but we must assume the record as presented correctly reflects the truth.

The sole question presented in this connection is: Was the answer of appellee which we have quoted of sufficient probative force, taken together with the uncontroverted facts shown, to make a jury issue? We have concluded it was not.

It could reasonably be said that by the change in counsel's question as originally propounded and as finally put during the controversy between objecting counsel and the court, the witness did not understand the last inquiry made, and that her answer was to the first question, since counsel said in propounding the second inquiry: "The question is," and then asked another type of question from that originally propounded; but be that as it may, we doubt if the matter had been submitted to the jury as to whether appellee was the owner of the judgment and it had been answered in the negative, the verdict of the jury could have been permitted to stand.

■ In the case of First National Bank of Greenville v. First State Bank of Campbell (Tex.Civ.App.) 252 S.W. 1089, 1090, there was a controversy between the two banks as to the ownership of a certain fund deposited in the appellant bank by one Gilbreath as the proceeds of certain cotton raised by Gilbreath upon which appellee bank had a lien. Gilbreath was instructed by the mortgagee to haul the cotton to Greenville and sell it for the account of the mortgagee; Gilbreath claimed to have done so and that he told the Greenville bank the money was for the account of the Campbell bank; this representation was denied by the Greenville bank, claiming the right to apply Gilbreath's deposit to an indebtedness held by it. The case was tried before a jury and the court peremptorily instructed a verdict for the Campbell bank. This action was complained of on appeal, where the controverted question was disregarded for reasons there assigned, and the court said further: "If the case had been submitted to the jury and a verdict had been returned for appellant, such verdict could not be permitted to stand in the light of the proof. Accordingly, in these circumstances, the trial court did not err in giving a peremptory instruction."

The rule is well established in this state that there must be more than a "scintilla" of evidence, more than a suspicion or surmise contrary to the prima facie case made or defense presented to entitle a complaining party to the submission of such question to the jury; in fact it must appear that evidence of some probative force and effect has been presented.

In the case of Harris v. Missouri-Kansas-Texas Ry. Co. (Tex.Civ.App.) 283 S. W. 895, 902, decided by this court, where the appellant sued appellee for the death of her husband, it was contended by appellant that her husband met his death because of the negligence of the appellee. There were no eyewitnesses to the accident and some circumstances were presented which, under certain explained conditions, could have rendered the appellee liable, but in discussing the facts the court announced what we believe to be a correct principle of law. It was there said:

"It is the duty of the court to instruct a verdict, though there be slight testimony, if its probative force be so weak that it only raises a mere surmise or suspicion of the existence of the fact sought to be established—such testimony, in legal contemplation, falling short of being 'any evidence'; and it is the duty of the court to determine whether the testimony has more than that degree of probative force. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059; Pat-

terson v. Williams (Tex.Civ.App.) 225 S. W. 89; Hines, Director Gen., v. Walker (Tex.Civ.App.) 225 S.W. 837; Stone & Webster Engineering Corporation v. Brewer (Tex.Civ.App.) 161 S.W. 38; Texas & P. Ry. Co. v. Shoemaker, 98 Tex. 451, 84 S.W. 1049."

■ In the group of assignments which we have discussed in this class, there is one which complains that the testimony of appellee, she being an interested witness, could not be taken as conclusive proof, but that the appellant was entitled to have the jury pass upon its weight and her credibility; the assignment announces a correct principle of law in some cases, but when the testimony of an interested witness, as in this case, is corroborated by other testimony, such as by an adverse party, and the uncontroverted written assignments, the rule is not applicable. Great Southern Life Ins. Co. v. Dorough (Tex.Civ.App.) 100 S.W.(2d) 772. All assignments of error raising these questions are overruled.

■ The appellee has filed a cross-assignment of error challenging the action of the trial court in finding the one-half interest in the judgment was barred by limitation when she acquired it from G. W. Maeyers and in rendering judgment in her favor for only one half of the amount sued for. There is no doubt if appellee was entitled to recover at all, it was upon the half interest in the judgment acquired from Evatt prior to July 8, 1935. It is contended by appellee that she in fact and in truth had purchased the Maeyers interest before it became barred and that the taking of the assignment was only a final consummation of the trade previously made, but with this contention we cannot agree. The record discloses that John L. Poulter was in fact negotiating for the purchase of that one-half interest prior to that date, but it is not shown that appellee was known to Maeyers as the purchaser, nor indeed was the transaction closed until the assignment was delivered after payment of the draft attached. The assignment to appellee was dated July 13, 1935, after the judgment was barred by limitation July 8, 1935; it was mailed in Bailey county, Tex., to Fort Worth, Tex., and thereafter transmitted to Fort Worth by United States mail and paid at the point of destination. The interest of Maeyers was barred by limitation when he executed the assignment and appellee received no better rights under the instrument than those held by Maeyers. The court denied appellee recovery for this interest and we think correctly so. The cross-assignment is overruled.

The second cross-assignment of error by appellee, in which it is complained that the court erroneously sustained the plea in abatement to the writ of attachment, should be sustained.

■ The objections to the attachment proceeding urged by appellant consisted chiefly of the contention urged on this appeal, that is, that no suit was instituted by the filing of the original petition by appellee and that because the writ of attachment was issued upon an application prior to the filing of the amended petition, it was ineffective. Appellant also urged, as a reason for the abatement of the writ, the sureties on the bond were insolvent. The latter complaint is not supported by the record and need not be further discussed. From what we have said in this opinion, it will be seen that the plea in abatement to the writ cannot be sustained upon the first ground mentioned. Appellant in his reply brief to appellee's cross-assignment does not urge that any grounds existed for quashing the writ other than that no legal action was pending when the writ was issued. It is somewhat difficult for us to see upon what theory the trial court sustained the plea. If it was upon the ground that appellee had not instituted a valid proceeding upon filing her original petition, the subsequent rendition of a judgment for her upon the amended petition was inconsistent with the conclusion reached in the hearing on the motion. The amended petition was filed after the debt was barred by limitation, and to render judgment for appellee as he did, the court must, of necessity, have concluded the original petition was the commencement of the suit and tolled limitation. This conclusion was correct and it should have been so determined in the hearing on the plea in abatement to the writ of attachment. The cross-assignment is sustained.

The judgment of the trial court will be affirmed in part and reversed and remanded with instructions in part. That part of the judgment rendered in favor of appellee for one-half of the value of the judgment sued on with interest from the date of the judgment rendered is affirmed, and that part in which the plea in abatement of appellant to the issuance of the writ of

attachment was sustained, is reversed and the cause remanded with instructions to the trial court to reform its judgment agreeable herewith and to foreclose the attachment lien created by the levy and for such other and further orders and decrees as are necessary for the enforcement thereof.

Affirmed in part, reversed and remanded with instructions in part.

BROWN, J., not sitting.