## L. G. BALFOUR CO. v. STATE TRUST & SAVINGS BANK OF DALLAS.

### No. 1997.

Court of Civil Appeals of Texas. Waco.

July 7, 1938.

Rehearing Denied Sept. 29, 1938.

Second Rehearing Denied Oct. 20, 1938.

478

Flippen & Miller, of Dallas, for plaintiff in error.

Judge Ocie Speer, of Austin, for defendant in error.

GALLAGHER, Chief Justice.

L. G. Balfour Company, a foreign corporation, sued State Trust & Savings Bank of Dallas for the sum of $600 which it alleged was deposited by it in defendant bank and not returned to it nor paid out under authority from it. The parties are herein designated as in the trial court.

Defendant alleged that plaintiff's account with it was handled by one Jones; that he was local agent and state manager for plaintiff; that the sum claimed by plaintiff grew out of the deposit of a draft in the sum of $600 which was credited to the account of plaintiff with defendant; that payment of such draft was refused and thereafter the amount thereof was charged back to Jones; that the same constituted a completed transaction, handled by Jones for plaintiff in connection with its business. Defendant also alleged that it furnished to plaintiff each month beginning with the month in which said transaction occurred and continuing for several months thereafter, a statement showing the deposits to and withdrawals from its account, together with cancelled vouchers supporting the entries so shown; that plaintiff made no complaint of any of the transactions so shown until long thereafter and that any right to claim or recover the item sued for was thereby waived. Defendant also alleged that all the actions of said Jones in the premises were within the regular course of his employment with plaintiff, and that if said draft was not properly charged against plaintiff, it should have made prompt complaint thereof; that no complaint was made by it until Jones had left Dallas and become largely indebted to plaintiff and that plaintiff was therefore estopped to recover in this suit.

Plaintiff, in replication, alleged that defendant, on September 14, 1931, purchased from said Jones for $600 cash a draft drawn by him for said amount on plaintiff at its home office in Attleboro, Massachusetts; that said draft was drawn by Jones without authority and that on presentation payment thereof was refused; that thereafter, on October 1, 1931, defendant having failed to secure reimbursement from Jones, charged plaintiff's account with the amount of such draft; that thereafter, on October 31, 1931, defendant credited plaintiff's account with the sum of $600, being the amount it had theretofore charged thereto because of the non payment of said draft, and that Jones in that connection delivered to defendant his personal check on it for said amount; that said check was not paid but was returned to Jones with a notation thereon indicating that he did not have on deposit with it sufficient funds to pay the same; that on November 2, 1931, defendant re-charged the amount of said check to plaintiff's account. Plaintiff also alleged that defendant knew Jones' financial condition and that at that time he was notoriously insolvent; and that defendant was in no way prejudiced by any failure on its part to repudiate said charges more promptly. Plaintiff further alleged that defendant bank did not turn over to it in connection with its monthly statements for said months the original draft purchased by it from Jones nor his bad check, but returned the same to him; that defendant's purpose was to mislead plaintiff by showing on its monthly statements for said months of September and October the proper balance on deposit with it.

The case was tried by the court without a jury. Plaintiff's president testified that its deposit in defendant's bank was subject to check only by him and one Parker, an assistant treasurer; that he and Parker executed and delivered to defendant signature

cards; that Jones was employed by plaintiff as resident manager and as district manager; that he was compensated on a commission basis with periodical advances; that he was also district manager for other concerns and carried certain side lines; that he was wholly without authority to draw and cash said draft. Said witness, without objection, testified to the drawing and cashing of said draft by Jones, its non payment and return; the charging of the same to plaintiff's account; the subsequent deposit by said Jones to its credit of his worthless check; the prompt debit of its account because of the non payment thereof, and the respective dates of all said transactions, as hereinbefore shown by the recital of plaintiff's pleadings. Plaintiff, in that connection, had said witness identify and then introduced in evidence a composite statement of plaintiff's account with defendant from September 25, 1931, to November 7, 1931, inclusive. Plaintiff also in that connection introduced in evidence the original draft drawn by Jones, with the endorsements thereon, and his worthless check of October 31, 1931, with the endorsements thereon. Said witness further testified that neither said draft nor said check was returned to plaintiff with the respective monthly statements which included the same; that both said instruments were returned by the bank to said Jones and that a mere memorandum was in each instance returned instead of the original. Said witness further testified that on November 14, 1931, he went personally to defendant bank and advised against extending any credit to Jones and informed them that he was hopelessly insolvent; that said Jones was at that time actually insolvent to the extent of at least $35,000 and was in that condition on September 1, 1931, and continuously thereafter. Plaintiff introduced in evidence an excerpt from the deposition of the president of defendant bank which substantially corroborated the testimony of said witness as to the details of both the draft and check transactions aforesaid.

Defendant introduced no witnesses and merely proved by the witness aforesaid on cross examination that his company had no correspondence with defendant regarding either said draft or said check.

■ The fact that plaintiff deposited the sum sued for to its credit in defendant bank is uncontroverted. It therefore devolved on defendant when sued therefor to show that it paid said sum out under authority from plaintiff, either express or implied, or that plaintiff had so acquiesced in the payment of the same to another as to be estopped to deny that such payment was authorized. First Nat. Bank of Weslaco v. Patty, Tex.Civ.App., 62 S.W.2d 629, 630, par. 2; First Nat. Bank of Quitman v. Wood County, Tex.Civ.App., 294 S.W. 324, par. 2, affirmed First Nat. Bank of Winnsboro v. First Nat. Bank, Tex.Com.App., 299 S.W. 856; 7 Am.Jur., p. 362 (top page) citing McCarty v. First Nat. Bank, 204 Ala. 424, 85 So. 754, 15 A.L.R. 153, par. 5; 7 C.J., p. 756, sec. 568, Id. p. 676, sec. 395, and authorities cited in note 15.

■ Defendant, as hereinbefore recited, alleged in substance that Jones was in charge of plaintiff's account; that said draft was credited to that account and when payment was refused the amount thereof was charged back to said account, and that said transaction was in connection with plaintiff's business. Defendant made no attempt to sustain said allegations by proof. Neither did it show that its action in charging said draft to plaintiff's account was directed or authorized by Jones. The testimony of plaintiff's president, as hereinbefore recited, denied said allegations and stated affirmatively that Jones was without authority or control over said account; that he had no authority to draw said draft nor to direct or consent that the amount thereof be charged to plaintiff's said account. While said witness may properly be classed as an interested one, nevertheless his testimony was wholly uncontradicted, was clear, positive and unequivocal on the points at issue and there are no circumstances in evidence tending materially to discredit or impeach the same. In addition, his testimony was affirmatively corroborated on the material points by practically all the other testimony in the case, including the excerpt from the deposition of defendant's president. Defendant made no attempt to controvert the same and could easily have done so had it not tacitly conceded the truth thereof. We have considered the testimony introduced as a whole and have concluded that it fails to show that defendant was authorized to charge said draft to plaintiff's account and to appropriate any part of plaintiff's deposit in satisfaction thereof. Great Southern Life Ins. Co. v. Dorough, Tex.Civ.App., 100 S.W.2d 772, 775 et seq., pars. 1 to 4, inclusive, and authorities there cited; Koenig v. Marti, Tex.Civ.App., 103 S.W.2d 1023, 1030, par. 10; Homestead

Bldg. & Loan Ass'n v. Youngblood, Tex. Civ.App., 111 S.W.2d 827, 828, par. 1; Taylor-Link Oil Co. v. Anderson, Tex.Civ.App., 92 S.W.2d 499, par. 3; Heiner v. Homeland Realty Co., Tex.Civ.App., 100 S.W.2d 793, 795, pars. 3 to 5, inclusive, and authorities there cited; Benn v. Security Realty & Development Co., Tex.Civ.App., 54 S.W.2d 146, par. 5, writ refused.

We do not see how the subsequent check transaction resulting in a credit and corresponding debit in any way affected the issue of the liability or nonliability of defendant for the sum sued for herein. We do not understand that either party hereto attaches any importance to said transaction except as an incident in connection with the monthly statements rendered by defendant to plaintiff. The patent effect of the same was to make it appear that plaintiff's balance at the close of October, 1931, was not depleted and to divert attention from the items of the statement for that month and the cancelled vouchers or purported vouchers returned to support the same.

▬▬▬ Defendant contends that inasmuch as it furnished to plaintiff for October and November, the months in which these transactions occurred, a statement of plaintiff's account with it, with the cancelled vouchers (or, as to these particular items, memoranda purporting to explain the same) and plaintiff did not promptly challenge such statements, they became, in contemplation of law, "accounts stated", and that plaintiff is estopped to question the correctness thereof. Our Supreme Court, speaking through Chief Justice Phillips, in the case of Dodson v. Watson, 110 Tex. 355, 220 S.W..771, pars. 1 and 2, 11 A.L.R. 583, held specifically that an "account stated" did not in itself create an estoppel but constituted merely prima facie evidence of the correctness of the items and the balance reached, which might be overcome by competent proof of error. We quote from the opinion in said case as follows [page 772]: "In modern business transactions, such, for instance, as between banks and their customers, it would be perilous to state accounts if the statement of the balance is to be held in all cases as creating a contract binding upon both parties and subject to no correction for errors unless they be due to the fault of both." Since, as hereinbefore recited, the undisputed evidence showed that defendant improperly charged plaintiff's account with the amount of said draft, its action in doing so was erroneous. See also, Ætna Casualty & S. Co. v. Higginbotham-Bartlett Co., Tex.Civ.App., 71 S.W.2d 592, 595, par. 2, and authorities there cited, and also authorities cited in note 11 A.L.R. page 607 et seq. While the doctrine of "account stated" applies to the relation of bank and depositor, it has been held specifically in this state that mere failure on the part of a depositor to examine the statements rendered by his bank and the cancelled vouchers returned therewith, and challenge the same if incorrect, does not create an estoppel in favor of the bank, unless it suffered injury as the result of such failure. First Nat. Bank of Weslaco v. Patty, Tex.Civ.App., 62 S.W.2d 629, 630, pars. 3 and 4, and authorities there cited. See also 7 Am.Jur., p. 369, sec. 514, and authorities cited in notes 2 and 3. Defendant wholly failed to show that it was injured by the delay of plaintiff in complaining of the errors or mischarges in its accounts. No estoppel is therefore shown.

The judgment of the trial court denying plaintiff a recovery is reversed and the cause remanded.