The CITY NATIONAL BANK OF CLE-
BURNE, Texas, Appellant,

v.

Mrs. Lenora STRICKLAND, Appellee.

No. 3211.

Court of Civil Appeals of Texas.

Waco.

Nov. 24, 1954.

Rehearing Denied Dec. 16, 1954.

HALE, Justice.

Mrs. Lenora Strickland, appellee, instituted this suit on August 11, 1952, against The City National Bank of Cleburne, hereafter referred to as appellant or as the bank, for the recovery of $10,100 and interest. Among other grounds of the recovery sought, appellee alleged in substance that on October 5, 1949, the bank, without her knowledge or consent, appropriated such sum from the funds she had deposited with it and either applied the same on the indebtedness of Lyman Walker to the bank or used the same for its own benefit. The bank answered with a general denial and, in addition thereto, it pleaded that on October 1st and again on November 1st, 1949, appellee discovered that W. E. Abbas, Vice President of the bank, had withdrawn certain sums of money from her account without her consent; that she kept this knowledge secret and continued to entrust her affairs to Abbas, who was known to her to be unworthy of trust, until he died on March 31, 1951; that before and after appellee discovered the dishonesty of Abbas, he acted as appellee's agent and not as agent for the bank; and it also pleaded limitation, laches and estoppel.

The case was tried by the court below without a jury and resulted in judgment for appellee against the bank for the sum of $10,100, with interest thereon at the rate of 6% per annum from October 5, 1949, less $606 previously paid to her as interest by the bank. From this judgment the bank has appealed.

The record does not contain any findings of fact by the trial court or any request by either party for any findings. Consequently, in passing upon the questions involved on the appeal, we must view the voluminous evidence as a whole and all reasonable inferences and deductions that may properly be drawn from the same in the light most favorable to the contentions of appellee, and in such manner as to sustain the judgment which was rendered in her favor, if that can reasonably be done. Although the bank sets forth

Heber Henry, Cleburne, Curtis White, Dallas, for appellant.

Walker & Baker, Cleburne, for appellee.

numerous arguments in its brief as to why the trial court erred in rendering judgment against it, many of the legal arguments thus presented are based upon issuable facts which we must assume the trial court resolved against the contentions of the bank.

The evidence shows that appellee had maintained an account with the bank since the death of her husband in 1929. The President of the bank did not reside in Cleburne, where the bank was situated, and he took no part in its daily operations, the actual management thereof being primarily in the hands of W. E. Abbas, who was the senior Vice President and who had been connected with the bank since its organization in 1927. Appellee conducted all of her banking transactions with Abbas. She authorized Abbas to make loans for her and to draw checks on her account with the bank when she approved a particular loan. But neither Abbas nor the bank had any authority to make any loan for appellee or to use any of her funds for that purpose without first obtaining her consent to make the loan.

The bank records introduced on the trial of the case disclose that from June, 1946 through November, 1950, appellee's account had been incorrectly debited on a number of occasions so as to show the withdrawal of amounts ranging from $1,000 to $5,000, but in each instance there was a corresponding credit entry before the end of the month in which the debit entry had been made, showing the deposit of an equal amount to her account. In each of these instances, however, the bank had mailed to appellee a monthly statement which did not show the withdrawal or the corresponding deposit so entered in the records of the bank and no cancelled items were submitted to appellee in any of her monthly statements evidencing these transactions, except in two instances.

In the first instance, the monthly statement which appellee received shortly after October 1, 1949, disclosed that her account had been debited during the preceding month with $14,800, and that it had been credited with $14,858.05 on September 29, 1949. Appellee testified that when she received this statement she went immediately to the bank and talked with Abbas and again told him "not to loan my money without first consulting me as to who he was going to loan it to, and if it suited me, then I would let him know whether to loan it or not."

In the second instance, the monthly statement which appellee received shortly after November 1, 1949, disclosed that on October 1, 1949, Abbas had drawn a check on the account of appellee for $10,100 and thereafter, on October 5, 1949, the amount of this check was charged against the account of appellee. This check was made payable to "Loan (as per request.)" On the face of the check, opposite the signature of Abbas, was the notation "For Loan, Allhands & Swatzell demand note." Appellee testified that when she received this statement she went again to the bank and talked with Abbas and told him she thought that was too much money to loan to one person and when she told Abbas she wanted the money returned, he said "you shall have it." But the money was not returned and the only benefit appellee has received by reason of the withdrawal of $10,100 from her account on October 5, 1949 was two credits to her account, each being in the sum of $303, one being entered on April 1, 1950, and one on October 1, 1950, these credits representing interest paid on the principal amount of the withdrawal, as evidenced by deposit slips mailed to appellee by the bank.

During the course of the conversation which appellee had with Abbas, as referred to in the next preceding paragraph hereof, Abbas represented to appellee that the proceeds from the check dated October 1, 1949, had been used in making a loan to Allhands & Swatzell, a local firm of contractors who had an excellent credit rating; that the payment of the note evidencing the loan was secured by ample collateral; and that he had placed the note and collateral in appellee's safety deposit box to which the bank held a key. When appellee interrogated Abbas as to why the loan to Allhands & Swatzell had not been made to them by the

bank, Abbas explained to her that the firm had already borrowed its legal limit from the bank and he thought it would be an accommodation to her to make the loan for her rather than to go to Ft. Worth for the purpose of getting the remainder of the money which Allhands & Swatzell required and that her money would be needed for only a short time and would be repaid. Appellee testified "He said 'you shall have your money.' Of course, I didn't worry about it, because I knew Swatzell was all right and they had it. I knew I would be getting it, but I didn't know how soon."

Abbas died on March 31, 1951. Shortly after his death appellee went to the bank and opened her safety deposit box but she found no note from Allhands & Swatzell in her box and she found no collateral belonging to them, as she expected to find from the representations which had been made to her by Abbas. Appellee did find in her safety box a note dated October 5, 1950, payable to her order in the sum of $10,100 signed by Lyman Walker. This note bore the typewritten notation: "guaranteed by W. E. Abbas." Stapled to the note was a contract of guaranty, whereby W. E. Abbas, by his signature thereto attached under date of October 5, 1950, (this date being exactly one year after appellee's account had been charged with $10,100) guaranteed to the City National Bank of Cleburne, Texas, the payment of the note of Lyman Walker dated October 5, 1950, for $10,100.

The evidence shows that Allhands & Swatzell were in good financial condition at all times material to this litigation, that they did not borrow any money from appellee and that they had no connection with any of the bank transactions involved in this suit. Lyman Walker testified that he borrowed large sums of money from the City National Bank of Cleburne and that his ledger showed loans to him from that bank only. He did not remember signing a note payable to appellee and he knew nothing of the note until after the death of Abbas. He was indebted to the bank for $137,000 at the end of December, 1949, for $237,800 at the end of December, 1950, and for $241,800 on March 31, 1951, when Abbas

died. The bank charged off of its books as a loss only $36,000 on the Lyman Walker indebtedness, although Walker testified that his claimed assets were completely worthless.

Based upon a close inspection of the record before us, it is the considered opinion of this court that there was no error in the judgment of the court below.

When the bank received the funds of appellee for deposit, it became indebted to her for the full amount so received and it could discharge the obligation thus assumed by it in no way other than to pay such amount back to her on demand or to pay the same to some other person upon her order. There is no evidence that appellee ever ordered the bank to pay any sum of money to Lyman Walker for any purpose, or that she ever authorized the bank or Abbas, by ratification or otherwise, either to pay, withdraw or use any part of the amount here in dispute for any purpose whatsoever, other than to make a loan of the same to Allhands & Swatzell. Since the evidence shows conclusively that no part of the disputed amount was paid, withdrawn or used for the purpose of making a loan on behalf of appellee to Allhands & Swatzell, we think the bank must be required to respond to appellee for the full amount thereof, together with interest at the rate of 6% per annum from the time when the bank improperly charged her account with the item in controversy, less the amount which has been paid to her as interest. City Nat. Bank of Bryan v. Gustavus, Tex.Civ.App., 77 S.W.2d 565 and authorities; Id., Tex. Com.App., 106 S.W.2d 262; L. G. Balfour Co. v. State Trust & Savings Bank of Dallas, Tex.Civ.App., 120 S.W.2d 477.

The facts involved in the case of City National Bank of Bryan v. Gustavus, supra, are closely analogous to the facts in the case here under consideration. In the Gustavus case this court held that the cashier of the City National Bank of Bryan, being the chief officer of the bank, was acting in the transactions there involved as the agent of the bank and not as the agent for his sister-in-law, and the Commission of

Appeals likewise held that the rights of Mrs. Gustavus were not to be prejudiced by "the fraudulent schemes of the bank's cashier."

But appellant argues that the holdings in the Gustavus case are not of controlling effect in their application to the case now under consideration because, it says in its brief, "Mrs. Gustavus was completely innocent and had no knowledge of any misconduct on the part of the cashier. Mrs. Strickland, on the other hand, knew Abbas had taken her money without her consent and she kept this knowledge secret and withheld it from any other officer of the bank. Mrs. Strickland wants to play a 'heads I win, tails you lose' game with the bank. If, after she made the discovery that Abbas was a thief and she continued to do business with him everything turned out all right, she would have no loss. But if things didn't go well, and a loss developed, she could transfer it to the bank." It also says that since appellee did not notify the bank in writing within one year from October 5, 1949, that the check which Abbas had drawn on October 1, 1949, against her account was unauthorized, she was precluded by the terms of Art. 342–711 of Vernon's Tex.Civ.Stats. from thereafter disputing the charge to her account on the ground that it was unauthorized. We are not in accord with these arguments.

From the evidence before us, we cannot say that Abbas ever took any money belonging to appellee, or that she "knew Abbas had taken her money." Although the evidence indicates that the books of the bank were so kept as to remain in balance at all times, there was no showing of a withdrawal from the bank of cash in the sum of $10,100 on October 5, 1949, and there was no showing as to where, if at any place in the books of the bank, a corresponding credit was entered to offset the debit of $10,100 against the account of Mrs. Strickland as entered on October 5, 1949. Hence, we do not know whether the bank, Abbas, Lyman Walker or some other party was the beneficiary of such debit entry.

While Mrs. Strickland knew shortly after November 1, 1949, what her bank statement for the previous month disclosed and the verbal explanation which Abbas made to her when she talked with him about the same, we see no reason why good faith or due diligence on her part should have required her, a widow 85 years of age, to notify the board of directors or any or all of the officers of the bank what the statement of the bank disclosed or what Abbas told her in explanation of the statement. The bank was charged with notice of what its records disclosed. By placing Abbas in control of the bank's operations, the board of directors thereby held him out to the public as being worthy of trust and confidence and we perceive no legal or equitable ground upon which the rights of Mrs. Strickland against the bank should now be prejudiced on account of any fraudulent scheme Abbas might have entertained or contrived in his efforts on behalf of the bank to finance the business affairs in which Lyman Walker was engaged. The notation on the check dated October 1, 1949, and the verbal explanation which Abbas gave to Mrs. Strickland as to the purpose for which the check had been drawn were false. But Mrs. Strickland did not know the material representations made to her by Abbas were false and she had a right to rely upon the truth of the representations so made to her by Abbas as the agent and vice principal of the bank.

Art. 342–711 of Vernon's Tex.Civ. Stats. provides in substance that no depositor of a bank shall be permitted to dispute any charge to his account on the ground that the same was an unauthorized item unless, within one year from the time the item is charged, he shall notify the bank in writing that the item so charged was unauthorized. However, we do not think this Article is applicable to the facts of the case before us. In construing this Article, the Supreme Court said in the case of Liberty Mut. Ins. Co. v. First Nat. Bank in Dallas, 151 Tex. 12, 245 S.W.2d 237, 240, that "it was the intention of the legislature in the enactment thereof, in the absence of notice,

to bar within one year causes of action founded upon infirmities in cancelled items which are discoverable upon examination." But the infirmities in the cancelled item upon which appellee's cause of action rests in this case were not discoverable upon an examination of the statement which the bank furnished to her. Although Abbas was not authorized in the first instance to draw a check against the account of appellee for the purpose of making a loan for her to Allhands & Swatzell, the basis of her suit does not rest upon that fact. Her cause of action is founded upon the fact that Abbas misrepresented to her the purpose for which the check had been drawn and the use which had been made of the funds derived from such check.

■■ Appellant says the suit of appellee, in so far as it is an action for fraud and deceit, is barred by the two years statute of limitation as embraced in Art. 5526 of Vernon's Tex.Civ.Stats. We cannot agree with this contention. Appellee did not discover the fraud and deceit which had been perpetrated against her until after the death of Abbas on March 31, 1951. Immediately after she discovered the fraud, she sought out the chief executive officer of the bank and attempted to discuss the matter with him but she was advised by the officer that she would have to discuss the situation with the bank's attorney. Appellee testified that she then sought to secure an interview with the bank's attorney but was never able to do so. It is well settled that limitation does not begin to run against an action based upon fraud until such time as the fraud is discovered, or in the exercise of due diligence should have been discovered.

■ Furthermore, since the trial court was warranted in finding under the evidence in this case that the bank, through its negligence and misrepresentations, made orally by its vice-president and through the deposit slips mailed to her, lulled appellee into a feeling of security and caused her to delay taking any action to enforce her claims, we think the bank is precluded and estopped from relying on its pleaded defenses of limitation. 28 Tex.Jur. 164; 28 Tex.Jur. 246; Delaware Punch Co. of America v. Reinarz, Tex.Civ.App., 61 S.W. 2d 135 (er. ref.).

■ From the evidence before us, we cannot say as a matter of law that appellee was negligent or careless in her conduct concerning any of the transactions involved in this suit, or that she is estopped in equity or barred by laches from prosecuting the cause of action declared upon. On the contrary, it appears to us that the trial court was warranted in finding that if the bank paid the check for $10,100 dated October 1, 1949 to anyone other than Allhands & Swatzell, it was negligent in doing so and that such negligence on the part of the bank was the proximate cause of appellee's loss. Under such facts, the trial court did not err in entering judgment for appellee. Greenville Nat. Exchange Bank v. Nussbaum, Tex.Civ.App., 154 S.W.2d 672 (er. ref. w. m.); Republic Nat. Bank of Dallas v. Maryland Cas. Co., Tex.Civ.App., 184 S.W.2d 496; Southwest Nat. Bank of Dallas v. H. F. Underwood & Co., 120 Tex. 83, 36 S.W.2d 141; Texas Bank & Trust Co. of Sweetwater v. Withers, Tex. Civ.App., 60 S.W.2d 1061 (er. dis.).

Because we have concluded that there was no error in the judgment appealed from, all of appellant's points are overruled and the judgment of the court below is affirmed.