## POPE v. CLARY.

### No. 14361.

Court of Civil Appeals of Texas. Fort Worth.

April 10, 1942.

Rehearing Denied May 8, 1942.

Martin, Moore & Brewster, of Fort Worth, for appellant.

Hill & Paddock, of Fort Worth, for appellee.

SPEER, Justice.

This is an appeal by J. C. Pope from an adverse judgment entered in the district court of Tarrant County, wherein he sued defendant Herman Clary for damages for injuries to his wife resulting from an automobile collision.

Plaintiff seeks a reversal of the judgment upon four points, presenting alleged misconduct of the jury, the overruling of his motion for new trial and the finding of the court that the alleged misconduct was immaterial.

Plaintiff alleged several grounds of negligence against defendant, which proximately caused the injuries sustained. The jury, by its verdict, acquitted defendant of all of the alleged acts of negligence except one, it being that defendant negligently parked his truck on the paved portion of the highway, when it was reasonably possible for him to have parked it off the pavement, and that said acts proximately caused the collision.

Defendant filed general denial and pleaded contributory negligence of plaintiff's wife in several particulars, alleging that said acts proximately caused the accident. By its verdict, the jury acquitted the wife of many alleged negligent acts, but convicted her of three acts of negligence, each of which proximately caused her injuries.

The material allegations of negligence and contributory negligence are reflected by the verdict. In substance the jury found that defendant failed to have two front lights burning on his truck at the time of the accident, but that such failure was not a proximate cause; there was no fog at the time of the accident; there was sufficient light at the time of the collision to make an object on the highway readily discernable at a distance of 200 feet; defendant's failure to have flares out at the required distance was not a proximate cause; defendant's truck was parked partly on the highway; it was reasonably possible for defendant to have parked his truck off the highway; his failure to park his truck off the highway was the proximate cause of the collision. There were findings of amounts reasonably incurred by plaintiff for hospital, medical bills and damages to his car; there was no finding of any amount for personal injuries sustained by plaintiff's wife. The jury found that Mrs. Pope failed to keep a proper lookout and that such failure was negligence and proximate cause; Mrs. Pope was operating her car immediately prior to and at the time of the collision at a rate of speed in excess of forty miles per hour and that said acts were a proximate cause. Mrs. Pope was operating her car at a speed rate of forty-eight miles per hour and that said acts were negligence and a proximate cause.

The court received the verdict and although the jury had made no answer to the special issue inquiring what amount of damages should be awarded to plaintiff for the injuries to his wife, the court observed by the verdict as a whole that it had been found that Mrs. Pope was guilty of contributory negligence in three particulars and that each was a proximate cause, and entered judgment for defendant.

Plaintiff filed his motion for new trial and, among other grounds, raised the question of jury misconduct, alleging that the answers to the three special issues Nos. 12, 14 and 17 were the result of the alleged

jury misconduct. Special issues 12, 14 and 17 were those in which the jury had found proximate causes from the three acts of negligence in which they had convicted Mrs. Pope.

A hearing was had upon the allegations contained in the motion. Jurors H. L. Rhodes and J. E. Whalen were introduced as witnesses by plaintiff upon the hearing. No other juror testified. Both jurors testified substantially that while they were deliberating upon their verdict and after they had agreed upon the answer, to an issue inquiring if defendant had parked his truck on the highway when he could have parked elsewhere, that said act was negligence and a proximate cause, of the collision, much discussion was had among them about the manner in which issues 12, 14 and 17, referable to whether or not the contributory negligence of Mrs. Pope were proximate causes, should be answered. Some of the jurors, including the two who testified, believed and had voted that those issues should be answered in the negative, that is, that her said acts were not proximate causes. The discussion consisted mainly of statements by other jurors that since they had already convicted defendant of negligence and proximate cause, it could make no difference in the judgment to be entered by the court, as to how they answered issues 12, 14 and 17. That the two jurors who testified believed from all the testimony plaintiff should recover, and if they had known that by answering those issues in the affirmative, plaintiff would be denied a recovery, they would not have answered them as they did, but relying upon the statements by other jurors to the effect that it would not prevent a judgment for plaintiff, they joined the other jurors in answering in the affirmative.

A very peculiar situation is presented to us, and we have seen no case where the precise point was involved. It is evident to us, from the testimony of the two jurors, that they each desired to so answer the issues that the court would enter judgment for plaintiff. Each juror who testified was examined carefully and painstakingly by counsel for both parties. In response to plaintiff's counsel they affirmed definitely that the discussions above mentioned took place and that, relying upon those statements, they answered issues 12, 14 and 17 in the affirmative, as they did, and would not have done so but for the discussions had. Responding to defendant's counsel

on cross-examination, the jurors said they recalled each issue as it was related by the examiner and that they answered each upon what they believed the facts in evidence warranted. Counsel repeated to them the issues inquiring whether or not Mrs. Pope kept a proper lookout, whether she was driving at a rate of speed in excess of 45 miles per hour and the rate of speed at which she was in fact driving, and the three questions inquiring if they were proximate causes. They said their affirmative answers were based upon the evidence adduced. The court questioned the juror Rhodes, who was foreman, at length, and the juror repeated what he had said to counsel, but frankly told the court in effect that he believed and relied upon what other jurors had said during their deliberations that their answers to these three issues would not affect the judgment to be entered, and that if he had known that it would, he would not have so answered them.

In the order overruling the motion, the court found that the two juror-witnesses had testified "truthfully" about what transpired in the jury room, and that each of the said jurors who testified would not have answered special issues 12, 14 and 17 as they did if they had believed their answers would prevent the entry of a judgment for plaintiff. The court further found in the judgment on the motion as follows: "The court further finds and concludes from the testimony of the plaintiff's wife, and the other testimony introduced in the trial of the case, that she was guilty of contributory negligence as a matter of law, and which was a proximate cause of the collision, and that the court should have instructed a verdict for the defendant, under the evidence in the case, and that by reason thereof, the fact that the jury discussed the effect of its answers to questions 12, 14 and 17 is wholly immaterial."

It conclusively appears that the alleged misconduct took place; that the discussion as to the effect answers to issues 12, 14 and 17 would have on the judgment to be entered influenced the answers agreed to by at least the two jurors who testified, and but for the alleged misconduct they would not have answered the issues as they did. The court found as a fact that these things happened.

[1] There can be no doubt that the discussions had by the jurors while deliberating upon how they would answer the ques-

tions inquiring about proximate cause, constituted misconduct. Walker v. Quanah, A. & P. R. Co., Tex.Com.App., 58 S.W.2d 4; Figula v. Fort Worth & D. C. R. Co., Tex.Civ.App., 131 S.W.2d 998, writ refused; Pryor v. New St. Anthony Hotel Co., Tex.Civ.App., 146 S.W.2d 428, writ refused, and cases cited. It is equally certain that the improper discussion in the jury room caused at least two of the jurors to answer as they did. It will be noted that one of the jurors said in response to the trial court's questions, in substance, that although the testimony offered supported the jury findings, yet if he had known that the answers made and returned by the jury to issues 12, 14 and 17 would have prevented a recovery by plaintiff, he would not have agreed to answer those questions as he did. It necessarily follows that no agreement would have been reached by the jury in answering those questions if it had not been for the statements made in the jury room, as above mentioned.

In Traders & General Insurance Co. v. Lincecum, 130 Tex. 220, 107 S.W.2d 585, 587, by the Commission of Appeals, adopted by the Supreme Court, under a somewhat different state of facts, discussing the effect of misconduct by the jury, it was said: "The question of its [misconduct] materiality and probable effect upon the verdict must be measured and appraised in the light of the entire record of the trial * * * ."

In City of Amarillo v. Huddleston, 152 S.W.2d 1088, by the Supreme Court, the rule announced in the foregoing citations is referred to with approval, but the facts in the case under discussion there were different and the distinguishing features pointed out.

Reverting to the findings and conclusions of the trial court in the order overruling the motion for new trial, it appears that after findings that the matters alleged to be misconduct actually took place and that two of the jurors were influenced by it, and but for which they would not have answered as they did, there was a further finding that the answers were immaterial for the reason he should have sustained defendant's motion for an instructed verdict, before the submission of the case on special issues. In this we think the trial court was in error.

It is now the settled rule in this state that in determining whether or not one party is entitled to an instructed verdict, all the testimony offered by the other party must be considered in its most favorable light to him. Conflicts in the testimony must be disregarded and every intendment reasonably deducible from the evidence of the losing party must be indulged in his favor. Anglin v. Cisco Mortgage Loan Co., 135 Tex. 188, 141 S.W.2d 935; LeMaster v. Fort Worth Transit Co., Tex.Sup., 160 S.W.2d 224 (not yet reported [in State reports]).

In determining whether or not the trial court should have given an instructed verdict for defendant, we must apply the above rule to the testimony of plaintiff's wife, whom we shall refer to as Mrs. Pope, and such other testimony as is favorable to plaintiff. On the date of the collision in question, Mrs. Pope left Fort Worth at about 5:30 o'clock in the morning, at a time when there was a heavy fog prevailing; she drove west toward Weatherford, Texas, on highway No. 80, and the accident occurred about 15 miles out of Fort Worth, at about 6:30 o'clock; the fog and atmospheric conditions were such that she could not see to drive with safety without her car lights; she met many cars on the road and they had their headlights burning; atmospheric conditions did not perceptibly improve between the time she left Fort Worth and the time of the accident. On account of the fog she could not see an object on the highway more than 20 or 30 feet away without her lights, but with the lights she could see another vehicle 50 or 60 feet; immediately prior to the accident she was driving on a newly paved road 30 feet wide, on her right hand side, watching the road ahead; she was going down a hillside at a rate of speed between 30 and 40 miles per hour, and suddenly she saw through the fog defendant's large semi-trailer truck facing her on the right hand side of the pavement, which had the appearance to her of a vehicle coming onto the pavement from that side; it had no lights on it at the time; approximately opposite defendant's truck on Mrs. Pope's left hand side of the highway she saw another truck with its lights burning, coming facing her on its own right hand side; she first thought she could pass between the trucks, but decided she could not do so, and vigorously applied her brakes in an attempt to stop. When she applied the brakes the car skidded and perhaps turned around passing from her right hand side of the highway across to her left

hand side, and collided with the truck on that side of the road, which was the one she had seen approaching on that side with lights burning. Mrs. Pope testified that defendant's truck had its front and back end on the pavement, apparently in kind of a jack-knife position, and that if she had proceeded on her right hand side as she was driving she would have struck it. She had never been over the road before, but was driving from North Carolina to California to see her husband, who was in the Navy; in her effort to miss defendant's truck after she saw it, she applied her brakes and began skidding and lost control of her car, striking the truck on her left hand side (not the truck of defendant) wrecking both her car and the truck, and received serious personal injuries; she was rendered unconscious and was carried from the scene to a hospital.

Testimony of other witnesses, and as illustrated by many photographs, indicates that the accident happened near the lowest point on the highway between two hills perhaps a quarter of a mile apart. A Mr. McPeak was the first person to approach the scene; he was driving east toward Fort Worth, and said there was a heavy fog and that he first saw the wreck at a distance of about 100 feet, could not discern the objects at that distance, but knew they were vehicles on the highway; he was driving 20 miles per hour with his lights on, and before he could stop, passed between defendant's truck and the two wrecked cars, but it was a very close drive to pass between them; when very close he observed Mrs. Pope lying in his path and swerved his car to miss her and that his tires "slid". This witness also said there was a heavy fog prevailing and that defendant's truck had its right rear and front wheels about two feet onto the pavement on the north side; this was Mrs. Pope's right hand side.

There was substantial testimony from other witnesses contradicting that of Mrs. Pope and McPeak as to the atmospheric conditions; another witness said there were skid marks on the pavement in the direction from which Mrs. Pope came, extending for 100 feet or more. Others testified that she was driving at a much faster rate of speed than she had testified; but, as above stated, we must discard the contradictory evidence in arriving at whether or not the court should have instructed a verdict for defendant upon the ground that Mrs. Pope's and other testimony showed as a matter of law that she was guilty of contributory negligence, causing her injuries.

The testimony discloses that some hours before the accident, defendant's truck driver attempted to go up the grade toward Fort Worth and the rain drowned out his motor; in an effort to get off the pavement, seeing he could not park his truck on the south or his right hand side, he found he could park it on the north or his left hand side; he coasted his truck, loaded with oil field supplies, backward, cutting to his left, and being the semi-trailer type, stopped on the left side, jack-knifed with its rear and front on the pavement.

■■ It is obvious from the testimony that the distance Mrs. Pope was from the truck when she first saw it and applied her brakes was her estimate or opinion, for if she discovered the truck 50 or 60 feet from her, as she said, while driving between 30 and 40 miles per hour, she would have covered the whole distance within a second. There is nothing to indicate that she lost control of her car until she discovered the presence of defendant's truck parked in her path, which appeared to her to be coming onto the highway from that side. In such circumstances she could not be said to be guilty of negligence as a matter of law in losing control of her car. Western Development Corporation v. Simmons, Tex.Civ.App., 124 S.W.2d 414, writ refused. Whether or not the court should have given an instructed verdict must be determined as the case stood before any issues were submitted and answered by the jury; the subsequent findings cannot be considered.

■ Under the adjudicated cases in this state, there are circumstances which may be determined by the court as constituting contributory negligence and proximate cause, as a matter of law, but they are rare. Seinsheimer v. Burkhart, 132 Tex. 336, 122 S.W.2d 1063. If reasonable minds could draw different conclusions from all the facts, a jury question is presented. Commercial Standard Ins. Co. v. Davis, 134 Tex. 487, 137 S.W.2d 1. This court recently held in case of Le Master v. Fort Worth Transit Co., Tex.Civ.App., 142 S.W. 2d 908, that the facts presented by the record justified a finding by the trial court that plaintiff was guilty of contributory negligence as a matter of law, causing his injuries, but a writ of error was granted

and the Supreme Court reversed our holding, applying the rule hereinabove announced, to a consideration alone of the testimony most favorable to plaintiff's contention. Le Master v. Fort Worth Transit Co., Tex.Sup., 160 S.W.2d 224 (not yet reported [in State reports]).

Believing, as we do, that no instructed verdict should have been given for defendant, and it appearing conclusively that the misconduct of the jury took place and that the verdict was affected by that misconduct, the judgment must be reversed and the cause remanded for another trial. It is so ordered.