### CREE et al. v. MILLER.
### No. 2975.

Court of Civil Appeals of Texas. Eastland.
Jan. 23, 1953.

Rehearing Denied Feb. 20, 1953.

See also Tex.Civ.App., 242 S.W.2d 197.

Max Addison and Crenshaw, Dupree & Milam, Lubbock, and Rountree, Renner & Snell, Lamesa, for appellants.

Bob Huff and John Splawn, Jr., Lubbock, and Judge Karl Cayton, Lamesa, for appellee.

COLLINGS, Justice.

This suit was brought by J. A. Miller against appellants, G. D. Cree, doing business as Odessa Rig & Equipment Company, and the Big Six Trucking Company, a corporation, seeking to recover damages for personal injuries and for damages to Miller's truck alleged to have been sustained in a collision with a truck and trailer of appellants which was parked at night without lights on the main traveled portion of the highway between the towns of Gail and Lamesa, Texas, at about 5:30 a. m. on

March 2, 1952. It was alleged that appellants negligently parked their truck on the main traveled portion of the highway at night without lights and failed to set out proper flares, all in violation of Section 93 of Art. 6701d, Vernon's Annotated Revised Civil Statutes of Texas.

Appellants alleged that Miller was guilty of contributory negligence in that he drove his truck at an excessive speed; that he drove the truck at such speed that he was unable to stop it within the range of his headlights; that he operated the truck with defective brakes; that he failed to keep a proper lookout and that he failed to turn his truck to avoid the collision.

Based upon answers of the jury to special issues submitted, judgment was entered for Miller and against appellants in the sum of $8,000. From such judgment this appeal is brought.

In numerous points appellants contend that the court erred in refusing to grant their motion for instructed verdict and their motion for judgment non obstante veredicto on the ground that the pleadings and the undisputed evidence show that appellee Miller was operating his truck at such a rate of speed that he could not stop within the range of his headlights and that he operated his truck with his headlights on dim, contrary to the Uniform Traffic Act, all of which conduct on the part of appellee constituted negligence and a proximate cause of the collision as a matter of law, and that the findings of the jury to the contrary are against the weight of the evidence and that the evidence is insufficient to support such contrary findings.

Appellee Miller alleged in his petition that at the instant he discovered appellants' semi-trailer and tractor parked on the highway at night that it was too late "to apply his brakes and stop in order to avoid a collision * * *." Miller testified that while traveling the highway between the towns of Gail and Lamesa at night, and after he had crossed the county line going toward Lamesa, he met a car a short distance before he had the collision with appellants' truck; that about two or three hundred yards before he reached the truck and not knowing that it was parked on the highway, he

dimmed his lights to meet the car and that after he had passed the car the next thing he saw was a dark object on the highway in front of him. He stated, "I just caught a glimpse of it in my lights and the first thing I thought of was to put on my brakes. I reached and got the trailer brake and put it on so it wouldn't jack-knife on me, and I saw, after putting on my foot brakes, that I couldn't stop it and then I tried to dodge it. I swerved to the left as far as I could * * * and it didn't turn far enough * *. There wasn't enough room for me to get stopped or enough room to get by." Miller further testified that he was about 100 feet from appellants' truck and trailer when he first saw that there was some "dark stationary object" on the road; that at first he could not tell what it was, but that after "I got to where I could see the thing in the light, then I could tell it was a trailer * * that is when I went to applying my brakes and cutting it short to the left." Miller admitted that on the occasion in question he was unable to bring his truck to a stop within the range of his headlights. He further testified as follows:

"A. I commenced to hit my brakes just as soon as I saw the object in the road ahead of me.

"Q. And which did you do first—your trailer brake? A. Pulled the trailer brake.

"Q. And that is when they locked, is when you first saw this object up ahead of you, that you testified was a hundred feet ahead of you when you first hit it? A. When I first saw it, saw the first glimpse of it.

"Q. That is when you hit the lever on the trailer brake and that is when the wheels on your trailer locked, is that right? A. That is when I commenced hitting my brakes. When I could determine what it was, I went for my brakes.

"Q. You told us a while ago you first got a glimpse of it and then you went on a little distance and then you saw what it was. When did you hit your trailer brake, when you first got the glimpse or when you made out what

it was? A. When I got the glimpse of the trailer.

"Q. When you got the glimpse of the trailer. That was a hundred feet before you hit your trailer lever, is that right? A. Yes sir.

\*   \*   \*   \*   \*   \*

"Q. All right. Now, you were moving at a pretty fast speed, though, when you hit the trailer, were you?' A. I don't know about how fast I was going, but I know I hit it with some force.

"Q. You hit it pretty hard to brake your frame, is that right, sir? A. Yes sir.

"Q. All right. Now, Mr. Miller, in other words, those brakes on your truck would not stop you within a hundred feet as you were driving down that road, is that your testimony here, that your truck and trailer were not equipped with brakes that would stop you at a hundred feet going at about thirty miles an hour?

\*   \*   \*   \*   \*   \*

"Well, I don't know whether it was a hundred or not. That was an approximation. But, anyway, I didn't get it stopped.

"Q. (By Mr. Milam) And your best estimate of it is a hundred feet that you were back there, is that right, sir? A. Yes, sir.

"Q. And it didn't stop you then? A. No, sir."

Miller estimated that his speed at the time was between 30 and 35 miles per hour. It was found by the jury that appellee did not fail to keep a proper lookout; that appellee was not operating his truck at such a speed that he was unable to stop it within the range of his headlights; that appellee's truck was equipped with lights sufficient to reveal a person or vehicle a safe distance ahead of the truck; that appellee did not fail to use all means at his command to avoid the collision; that appellee had his truck under proper control; that appellee failed to have his truck equipped with brakes capable of stopping his truck in 30 feet at a speed of 20 miles per hour; that such failure to have his truck equipped with brakes capable of stopping the truck in 30 feet at 20 miles per hour was not a proximate cause of the collision; that appellee failed to apply his brakes in time to avoid the collision and that appellee's failure to apply his brakes in time to avoid the collision was not a proximate cause of the collision. The jury also found that appellee Miller did not discover appellants' truck and realize its perilious position in time to avoid the collision.

Appellants urge that the jury findings cannot be reconciled with the facts shown by the evidence. They insist that if the inadequacy of Miller's brakes was not a proximate cause of the collision that it is inescapable that he was not keeping a proper lookout, or that he was operating his vehicle at such a rate of speed that he was unable to stop his truck within the range of his headlights.

■■ Appellants' position is not tenable under the facts as shown by the evidence. Miller was confronted with an emergency and it cannot be said, as a matter of law, that he exercised no care to avoid the collision. The evidence supports the jury findings that the inadequacy of Miller's brakes was not a proximate cause of the collision and that he was keeping a proper lookout. The evidence does not establish conclusively that Miller was operating his vehicle at such a rate of speed that he could not stop within the range of his headlights. Miller alleged that he did not and could not stop in time to avoid a collision after he saw appellants' truck. He testified that he was unable to bring his truck to a stop within the range of his headlights, but his testimony must be considered in connection with other facts and circumstances and evidence in the case, and when so considered, it is a reasonable conclusion that elements other than his rate of speed had intervened which raised fact issues on the question of his negligence in failing to stop. Shortly before the collision he met an on-coming car with its headlights shining toward him. Miller had dimmed his lights as he was required to do when meeting an on-coming vehicle.

Shortly after he passed such vehicle with its headlights shining into his eyes he first saw the "dark object" on the highway about one hundred feet in front of him. Appellee testified that he knew at the time that he was between two culverts and was afraid to try to pull to the right because if he did so he might run off the end of the next culvert; that he applied his brakes to his trailer first in order to keep the trailer from jack-knifing and and next applied his foot brakes, and then after he saw that he was unable to stop in time to avoid a collision, he unsuccessfully attempted to prevent a crash by swerving to the left. If Miller had not met the car with its lights shining in his eyes and had not dimmed his own lights as he was legally required to do, shortly before the collision, he might have seen appellants' truck sooner and have been able to stop before there was a collision. These circumstances tend to explain why Miller did not discover appellants' truck sooner and why he did not either stop or swerve in time to avoid the truck after he did see it. Under such facts, the question of whether Miller was operating his vehicle at such rate of speed that he could not stop within the range of his headlights was an issue of fact for the jury to determine. Linkenhoger v. Gilbert, Tex.Civ. App., 223 S.W.2d 308; Pennington Produce Co. v. Wonn, Tex.Civ.App., 49 S.W. 2d 482; Lackey v. Moffett, Tex.Civ.App., 172 S.W.2d 715; Pope v. Clary, Tex. Civ.App., 161 S.W.2d 828; Western Development Corp. v. Simmons, Tex.Civ.App., 124 S.W.2d 414; Little Rock Furniture Mfg. Co. v. Dunn, Tex.Civ.App., 218 S.W. 2d 527.

■ We are also unable to agree with appellants' contention that it is conclusive that Miller was guilty of contributory negligence in operating his truck with the headlights on dim. He was required by law to dim his headlights when he met the on-coming car and this he did. He was exercising care for the safety of himself and others who were using the highway. The time between the meeting of the car and the collision with appellants' truck was so short that it cannot be held, as a matter of law, that he was guilty of contributory negligence in not switching his headlights back to bright during the intervening period.

Appellants urge in numerous other points that the court erred in refusing to grant their motions for instructed verdict and for judgment non obstante veredicto because the jury found and it was undisputed that appellee, on the occasion in question, was operating his truck while it was not equipped with brakes in good working order so that it could be stopped within 30 feet while driving at a speed of 20 miles per hour in violation of Art. 6701d, Section 132(b), Vernon's Annotated Revised Civil Statutes; that the jury finding that appellee's inadequate brakes were not a proximate cause of the collision is contrary to and without support in the evidence.

■ Appellants refer to and adopt the argument made in connection with points heretofore discussed. They contend that Miller was either negligent in failing to apply his brakes or his brakes were inadequate to stop his truck in time to avoid the collision. These points are also overruled. They are subject to the same objection as the points previously discussed. Miller was confronted with a difficult situation when he came upon appellants' truck parked on the highway at night without lights or other warning devices shortly after meeting a car with its lights shining into his eyes and with his own lights on dim. Under such circumstances the question of whether his defective brakes were a proximate cause of the collision or whether the collision would have occurred even if his brakes had been in proper working order, was for the jury. Tarry Warehouse & Storage Co. v. Duvall, 131 Tex. 466, 115 S.W.2d 401; Western Development Corporation v. Simmons, Tex.Civ.App., 124 S.W.2d 414.

The jury found that on the occasion in question (1) appellants' truck and semi-trailer was stopped on the right hand side of the paved portion of the highway; (2) that appellants failed to have any lights and illuminating devices burning on such truck and trailer and (3) failed to have

burning on the trailer a red light visible for a distance of 500 feet; that each of the above mentioned acts or omissions was negligence and the jury found further in special issues Nos. 3, 6 and 9 that such negligence was a proximate cause of the personal injuries sustained by plaintiff, J. A. Miller. Appellants contend that the court erred in overruling timely objections and exceptions to special issues Nos. 3, 6 and 9 which said objections complain that such special issues commented upon the weight of the evidence and that they did not constitute ultimate fact issues. Appellants point out that the court did not inquire whether Miller suffered any injuries as a result of the collision but inquired whether the negligence of appellants was a proximate cause of injuries which appellants contend the court improperly assumed to have been suffered by Miller. Appellants urge that by assuming that Miller suffered injuries as a result of the collision, the court assumed as true a disputed fact and in effect commented upon the weight of the evidence.

■ An examination of the record indicates that there is no dispute but that Miller was injured in the collision. Miller and his wife both testified concerning injuries to his legs and back. Although their testimony is that of interested witnesses, the fact that he did sustain some injuries was not disputed and their testimony was not discredited or impeached in any manner, but was corroborated by other evidence. Weldon Lewis, a disinterested witness, went to the scene of the wreck on the morning of March 2, 1951, about an hour and a half after the collision and brought in Miller's truck. He testified that the truck was "a tee total wreck;" that he had occasion to be around Miller about an hour at that time and could tell that Miller was injured. He stated that Miller was limping. It is undisputed that Miller did suffer injuries as a result of the collision and the court did not err in so assuming in the submission of the special issues complained of. Koenig v. Marti, Tex.Civ.App., 103 S.W.2d 1023 (Er. Dis.); Heiner v. Home Land Realty Co., Tex.Civ.App., 100 S.W.2d 793; Great Southern Life Ins. Co. v. Dorough, Tex.Civ.App., 100 S.W.2d 772; 41 Tex.Jur. 942.

■ Appellants contend in points Nos. 32, 33, 34 and 35 that the court erred in refusing to submit to the jury their requested special issues Nos. 1, 2, 3 and 4 which inquired (1) whether appellee's truck was equipped with adequate brakes in good working order; (2) whether appellee failed to reduce the speed of his truck when he was blinded by the headlights of an approaching vehicle; (3) whether appellee failed to stop his truck prior to the collision, and (4) at what rate of speed appellee was operating his truck immediately prior to the collision, and whether such acts or omissions on the part of appellee constituted negligence and a proximate cause of the collision. Numerous special issues, including those on negligence and proximate cause, were submitted to the jury inquiring about alleged contributory negligence on the part of appellee Miller. Although the exact issues requested by appellants in requested special issues Nos. 1, 2, 3 and 4 were not given by the court, numerous issues were given concerning the sufficiency of appellee's brakes, the failure to reduce his speed, his failure to apply his brakes in time to avoid a collision, etc., and in our opinion, the substance of each of the requested issues was substantially submitted in other issues contained in the court's main charge. The court did not err in refusing to submit such requested issues. Special issues Nos. 4 and 5 of the court's charge were as follows:

"Special Issue No. 4: Do you find from a preponderance of the evidence at the time and place of the collision in question that the Defendants failed to have any lights and illuminating devices burning on Defendants' said tractor and semi-trailer? Answer: 'They failed.' "

"If you have answered Special Issue No. 4 'They failed', and only in such event, then answer Special Issue No. 5."

"Special Issue No. 5: Do you find from a preponderance of the evidence that the failure, if any, of the Defend-

ants to have any lights and illuminating devices burning on their tractor and semi-trailer, was negligence, as that term was defined herein? Answer 'Yes' or 'No.' Answer: 'Yes.'"

Appellants' points Nos. 21 and 22 urge that the court erred in overruling objections and exceptions to issues Nos. 4 and 5. The objections were to the effect that the issues were too broad and general; were misleading to the jury; would lead the jury to believe that appellants were required to have something on their truck other than lights and reflectors and that the term "illuminating devices" was not defined by the court. The term "illuminating devices" is not a legal term but is an ordinarily well understood term and does not require a definition. 41 Tex.Jur. 1156. In any event, appellants submitted no definition to the court as required by Rule 279, Texas Rules of Civil Procedure. Issues Nos. 4 and 5 properly submitted ultimate issues in the case and were not subject to the objections urged. The points are overruled.

Special issue No. 7 of the court's charge was as follows:

"Do you find from a preponderance of the evidence that at the time and place of the collision in question that defendants had failed to have burning on their semi-trailer a red light visible from a distance of 500 feet to the rear of defendants' vehicle?"

Appellants' point No. 23 is based upon the action of the court in overruling objections and exceptions to the submission of the above special issue. Contrary to appellants' contention, the issue properly places the burden of proof on the plaintiff and is supported by pleadings and evidence.

It may be that special issue No. 7 was defective in not qualifying the description of the red light therein inquired about to such lights as would be visible for 500 feet upon a straight, level, unlighted highway under normal atmospheric conditions in compliance with subdivision 109(b) of Art. 6701d, Vernon's Annotated Revised Civil Statutes. But if the issue was subject to such an objection, appellants' objection did not reach the defect. The ob-

jection which appellants made to the submission of such issue was that "said issue, without being coupled with other issues that are not included in the court's charge could not form the basis of any judgment, and that the essential elements are left out of the court's charge in regard to said issue." The objection did not point out what elements had been omitted from special issue No. 7 or what other issues were necessary to establish appellants' liability. The issue described the red light as being one visible from a distance of 500 feet to the rear of defendants' vehicle, and in the absence of a more specific objection than was made by appellants, this was an adequate submission of the question to the jury.

Art. 6701d, § 109(b) provides as follows:

"Whenever requirement is hereinafter declared as to the distance from which certain lamps and devices shall render objects visible or within which such lamps or devices shall be visible, said provision shall apply during the time stated in subdivision (a) of this section upon a straight, level, unlighted highway under normal atmospheric conditions unless a different time or condition is expressly stated."

Appellants particularly urge that the affirmative answer to special issue No. 7 by the jury could not form the basis of a judgment because of the absence or omission of other issues establishing that the road upon which the collision occurred was straight and level and that the collision occurred under normal atmospheric conditions. Appellants contend that the evidence conclusively shows that the atmospheric conditions and the condition of the roadway were not in accordance with the provision of section 109(b), supra, and that the requirements of Section 121 of Art. 6701d, that a red light be exhibited on a stopped or parked vehicle, does not apply. This contention is overruled. Appellants misconstrue the import of section 109(b) in urging that proof and findings that the highway was straight and level and that the atmospheric conditions were normal at the time of the collision were prerequisites to their liability. These provisions simply described the condition under which the

statute requires that the lamps or lighting devices shall be visible for the distances therein stated. The effect of the provision is to set a standard of efficiency for lighting devices required and is not to limit their use to a certain type of roadway or weather condition.

Special issue No. 26 of the court's charge and the instructions given the jury in connection therewith were as follows:

"What amount of money, if any, do you find by a preponderance of the evidence, if paid now, would fairly and reasonably compensate the plaintiff, J. A. Miller, for injuries to his person, if any, proximately caused by the negligence, if any, of the Defendants in the accident in question? Answer by stating the amount of money, or none, as you may find. Answer: $6,500.00.

"In estimating the amount of damages, if any, you may take into consideration the following: physical and mental pain and suffering, if any, suffered or in all reasonable probability to be suffered by said plaintiff as a proximate result of the injuries, if any. In this connection, you may also take into consideration loss of earnings, if any, up to the present as a proximate result of said accident; and if you further believe from a preponderance of the evidence that Plaintiff's injuries, if any, will in all reasonable probability, impair his capacity to earn money in the future, you may include in your estimate such amount as you believe from the evidence, if paid now, will fairly and reasonably compensate him for such impaired capacity, if any, to perform services of a pecuniary value in the future proximately resulting from such accident or collision."

Appellants further contend that the court erred in overruling their objections and exceptions to special issue No. 26. It is urged that said issue improperly placed the burden of proof and placed an undue burden on appellants; that it constituted a comment on the weight of the evidence and did not instruct the jury that they might consider only those elements listed in the instruction and not to consider any other elements. Appellants particularly urge that although the jury was instructed that they might take into consideration appellee's loss of earnings, if any, that there was no evidence in the record by which the jury could intelligently determine the money value of Miller's diminished earning capacity, but that such issue and the instructions in connection therewith would permit the jury to guess or estimate without any guide as to the elements of damage they might consider.

Appellee Miller testified that he did sustain injuries as a result of the collision; that it "bunged up" both of his knees and his back; that his knees are stiff and "will grind when I bend them" and that they stay sore under the knee caps all of the time; that he cannot kneel down on the floor or ground to do any kind of work at all; that his back hurts him all of the time. He further testified that if he had to bend over for any purpose that it was difficult for him to regain an erect position and that on occasions he had to stay stooped for five or ten minutes before he could stand up perfectly straight again. He testified that because of his injuries he had missed and had to turn down several hauling jobs because he was not able to do the kind of work required for the job. He stated that prior to the accident and his injury, his average net earnings had been around $500 per month; that since the accident, his net earnings had amounted to only about $300 per month. Miller's wife also testified to the reduction of his income from about $500 per month prior to the accident to about $300 per month after the accident.

Dr. Tull testified that he had examined Miller to determine the extent and duration of his injuries and was of the opinion that the extent of his disability was seventy-five or eighty percent and that the duration of his disability was permanent.

The evidence was, in our opinion, such that the jury could consider it and reach an intelligent determination of the extent of Miller's diminished ability to earn money in both the past and in the future. It is true that there was evidence and facts and circumstances in the case inconsistent

with the above evidence but this was a matter for determination by the jury.

■ Issue No. 26 properly placed the burden of proof on the plaintiff. The court correctly instructed the jury of the items they should consider in estimating the amount of damages, if any, which appellee had suffered. It was not necessary for the court to further instruct the jury that they should not consider any other elements of damage when there was no evidence of any injury or damage suffered by Miller other than the injury and damages alleged in his petition, shown by the evidence and listed for consideration in the court's instructions. Dallas Railway & Terminal Co. v. Orr, 147 Tex. 383, 215 S.W.2d 862.

■ Appellants complain of the action of the court in overruling objections and exceptions to the submission of special issue No. 27 inquiring as to the reasonable cash market value of appellee's truck in Dawson County prior to the collision. It is contended by appellants that there were no pleadings or evidence to support the submission of such issue in that although it was testified that the value of the truck prior to the collision was $1,800 or $2,000, there was nothing to show where the truck had such value, and no showing that the truck had such value in Lamesa, in Dawson County, Texas, or at the place of the collision. Appellee's pleadings alleged that immediately before the collision his truck had a reasonable cash market value in Dawson County of $3,000. The witness Harris Stanley Key testified that he was and had been since 1936, in the garage business in Lamesa which we take judicial notice, is situated in and is the county seat of Dawson County; that he had bought and sold and had occasion to assess the market value of trucks and motor vehicles during such period; that he was familiar with Miller's International truck prior to the collision and had done work on it and inspected it a short time before the collision and that "according to the price of everything there" it was his opinion that the truck then had a value of between $1,800 and $2,000. It is apparent from Key's testimony that in discussing the value of Miller's truck he is talking about its value in the city of Lamesa. Although the question he was asked concerning his opinion of the value of the truck did not mention or limit the inquiry to Lamesa or Dawson County, his answer had that effect. He was in the garage business in Lamesa, had repaired and made inspections of the truck at that place and in giving his opinion of its value, indicated and stated that it was based upon and "according to the price of everything there." The word "there" could refer to no other place or locality than the city of Lamesa. Under this evidence, it cannot be said that there is no proof of the market value of appellee's truck in Dawson County prior to the collision. Sherwin-Williams Co. of Texas v. Delahoussaye, Tex.Civ. App., 124 S.W.2d 870 (Writ Dis.).

■ In points 36 to 50, inclusive, appellants contend that the court erred in overruling their motion for a new trial because it is insisted by them, the answers of the jury to all of the special issues except one, were so against the weight of the evidence as to indicate bias and prejudice on the part of the jury; that there was in fact no evidence to support the jury findings on such issues. The evidence bearing upon the 28 special issues of the court's charge, many of which had several subdivisions, is of such volume that it is not practical or desirable that it should be here detailed. A careful examination of the evidence, however, indicates that it does support the jury verdict which finds: that appellant stopped their truck and semi-trailer upon the right hand side of the paved portion of the highway; that they failed to have any lights and illuminating devices burning on their truck or semi-trailer; that they failed to have burning on their semi-trailer a red light visible from a distance of 500 feet to the rear, and that such acts and omissions were negligence and a proximate cause of appellee's injuries and damage.

■ Under such points, which appellants group for discussion, it is particularly urged that it is impossible for all of the jury findings to stand because under the evidence they are not consistent, one with the other. Such findings were: that Miller did not fail to sufficiently reduce his speed; that he was operating at a speed at which he could stop within the range of his headlights; that he was keeping a proper

lookout; that he did not fail to reduce his speed upon dimming his headlights, and then the finding that he did not discover and realize the perilous position of appellants' truck in time to avoid the collision. Appellants' contention is, in effect, that under the evidence, it is inescapable that Miller was guilty of some one or more of the above omissions or acts of contributory negligence. The fallacy in this contention is that the acts and omissions of which they contend Miller was guilty do not present all of the possible and probable causes of the collision supported by the evidence. The evidence would have supported a finding favorable to appellants on most, if not all, of the above issues. The evidence also supports the conclusion, as previously indicated, that the bright lights of the car which Miller met shortly before the collision under all of the circumstances in evidence, was a contributing cause of the collision to the exclusion of Miller's negligence in any of the manners and ways alleged and insisted upon by appellants. Such a conclusion is not inconsistent or in conflict with the further finding by the jury that the blinding lights of the automobile which Miller met shortly prior to the collision did not constitute a new and independent cause of the collision. The jury has found that appellants were guilty of negligence proximately causing the damage sustained by appellee. A new and independent cause under the law and as defined by the court in this case is a cause which also destroys the causal connection between the acts or omissions, if any, of the defendant and the injury complained of, and thereby becomes in itself the immediate cause of the injury.

In our opinion, the findings of the jury are not so against the weight and preponderance of the evidence as to be clearly wrong and to require the case to be remanded for another trial.

Appellants also urge that the court erred in refusing to grant their motion for new trial because the jury was guilty of misconduct in discussing insurance and attorneys' fees and in reaching a verdict by quotient. It is contended by appellants that such alleged misconduct shows bias and prejudice on the part of the jury which resulted in an award of excessive damages particularly when considered in the light of the alleged improbability of the evidence and its insufficiency to support the jury findings. Appellants' contention concerning the insufficiency of the evidence have been discussed and disposed of in other points.

The only evidence in support of the alleged jury misconduct is the testimony of one of the jurors on motion for new trial. The juror testified that immediately after the jury retired into the jury room they lighted up cigarettes and sat around and smoked and talked for a short time before they began to consider the court's charge and their verdict. The juror stated that during such interval, one of the jurors at the end of the table at which he was seated asked the question whether appellants carried any insurance; that one of the other jurors spoke up and said that he was sure they did; that he never saw a big trucking outfit that didn't; that another one of the jurors immediately said: "Well, it makes no difference. It wasn't mentioned in the law suit, therefore, we can't use it in changing the minds in any way." The witness further testified that during the same interval the matter of attorneys' fees was mentioned and that one of the jurors asked what lawyers usually got out of a case like the one being tried and another juror replied that he didn't know for sure, but he thought about one-third. The witness testified that at the time attorneys' fees were so discussed, another member of the jury admonished those who were discussing the question that "that was something they should not consider" in arriving at their verdict. The witness stated that he did not know how many of the jurors heard the remarks about insurance and attorneys' fees but that the matters were never again mentioned by the jurors at any time during their deliberations. The circumstances as above outlined do not show reversible error. Stotts v. Love, Tex.Civ.App., 184 S.W.2d 308.

The following is an excerpt from the testimony of the only witness who testified concerning a quotient verdict and the substance of the evidence on the point:

"Q: Mr. Dean, you did not bind yourself, nor did any of the other ju-

rors bind themselves, that they would agree to whatever figure that that came out to, before it was done? A. I didn't.

"Q. So far as you know, none of the rest? A. So far as. I know, yes sir.

"Q. And after this juror had done that, then you all, then he mentioned that sometime later, after he had done it, did he not? A. Well, he had already figured it out when I knew it.

"Q. And he announced that was what the figure came to? A. Uh-huh.

"Q. Now, then, you all took that figure and discussed it as to whether it would be fair and appropriate, did you not? A. Yes, it was discussed.

"Q. And then you took an independent ballot to arrive at the damages, and it happened to be that amount? A. Yes.

"Q. Is that correct? A. Yes.

"Q. Now, you didn't consider yourself bound to give that figure, did you, the average that he came to? A. No, I could have voted against it."

The above evidence shows no agreement of the jurors, express or implied, to be bound by a quotient verdict. The evidence on the question is to the contrary. Appellants' points on jury misconduct are overruled. J. Weingarten, Inc., v. Sanchez, Tex.Civ.App., 228 S.W.2d 303.

The judgment of the trial court is affirmed.