TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-93-00589-CV







Darla Humes, Appellant




v.




Thomas Hallmark, Appellee







FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT


NO. C88-25A, HONORABLE FRED CLARK, JUDGE PRESIDING







PER CURIAM


 Appellant Darla Humes appeals from a judgment rendered on a jury verdict in favor
of appellee Thomas Hallmark on claims of common-law conversion and of wrongful seizure under
Tex. Prop. Code § 54.046 (West Supp. 1995). The jury awarded Hallmark damages of $18,020
for the converted property, attorney's fees of $11,000, exemplary damages of $6,000 and $200
for a security deposit that was never returned. Humes brings six points of error, all of which
complain that there is no evidence, or insufficient evidence, to support the jury finding of the
value of the converted property. We will affirm the trial court's judgment.



FACTS


 Hallmark's claims arose from an incident in which Humes, his landlord, removed
his belongings from the house he rented from her. Some of the items were never returned and
others were returned damaged. The items included Hallmark's tools of trade, household
belongings, and collection of Indian artifacts.



 THE ANALYSIS


 In point of error one, Humes complains that the trial court erred in denying her
motion for an instructed verdict based on Hallmark's failure to prove the market value of the
property at the time and place of conversion. Humes waived this objection because she did not
re-urge her motion at the conclusion of evidence. See Shindler v. Marr & Assocs., 695 S.W.2d
699, 706 (Tex. Civ. App.--Houston [1st Dist.] 1985, writ ref'd n.r.e.); Texas Steel Co. v.
Douglas, 533 S.W.2d 111, 114 (Tex. Civ. App.--Fort Worth 1976, writ ref'd n.r.e.). We
overrule Humes' first point of error.

 In points of error two and four, Humes complains that there was no evidence to
support the damage award. In deciding a no-evidence point, we consider only the evidence and
inferences tending to support the finding of the trier of fact and disregard all evidence and
inferences to the contrary. Alm v. Aluminum Co. of Am., 717 S.W.2d 588, 593 (Tex. 1986), cert.
denied, 498 U.S. 847 (1990); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). We will
overrule a no-evidence challenge if more than a scintilla of evidence supports a verdict. Freeman
v. Texas Compensation Ins. Co., 603 S.W.2d 186, 191 (Tex. 1980).

 The single jury issue regarding the value of the destroyed property encompassed
damages for Hallmark's tools of trade, household goods, and collection of Indian artifacts. Since
our analysis of the value of the Indian artifacts is determinative, we do not address the evidence
regarding the value of the household goods or tools of trade. Also, since we rest our decision on
the law of conversion, we do not address the theory of wrongful seizure.



A. Nature of Indian Artifacts

 Casey Bren Wulf testified as an expert regarding the market value of the artifacts. 
He testified that Indian artifacts range in age from 15,000 to 1,000 years old and are generally
bought and sold at Indian artifact shows, flea markets, and specialty shops, and that a standard
price guide is published. He also testified regarding factors that affect the price: the quality of
workmanship, the quality of the material, the location at which the artifact was found, and the age
and condition of the artifact.



B. Place of Conversion

 Damages for conversion are measured by market value at the place of conversion. 
Prewitt v. Branham, 643 S.W.2d 122, 123 (Tex. 1982). Humes argues that Wulf's testimony was
incompetent to establish the value of the Indian artifacts at the place of conversion because Wulf
did not explicitly limit his testimony to the market value of the Indian artifacts in Comal County. 
Wulf testified as to market values in "this area of Texas." 

 We hold that Wulf's testimony establishes the value of the artifacts at the place of
conversion on two bases. First, Wulf's testimony indicates that "this area" referred to the place
of conversion. Second, to the extent that "this area" referred to an area larger than the place of
conversion, the evidence is relevant to establish market value at the place of conversion since the
evidence does not show that the value at the place of conversion differs from the value in the
larger area.

 1. Definition of "Place" 

 The first issue is to define the "place" of conversion when the conversion occurs
outside the corporate limits of a city and near the boundary of two counties. Recognizing that
market value does not necessarily change at the boundaries of political subdivisions, we hold that
in such an instance the "place" of conversion is a reasonable area surrounding the precise location
at which the conversion occurred. What is reasonable turns on the circumstances involved.

 In this case, the precise location of the conversion is the Canyon Lake area of
Highway 306 in Comal County. We take judicial notice of the fact that that portion of Highway
306 is as close to San Marcos and Wimberly in Hays County as it is to New Braunfels in Comal
County. See Ellis v. Heidrick, 154 S.W.2d 239, 294 (Tex. Civ. App.--San Antonio 1941, writ
ref'd) (taking judicial notice that Harlingen, in Cameron County, is close to Mercedes, in Hidalgo
County). San Marcos and Wimberly are within a reasonable area surrounding the precise location
of the conversion, and therefore both come within the definition of the "place" of conversion.



 2. Meaning of "this area"

 Although "this area of Texas" was not defined, (1) the record indicates that Wulf
considered "this area" to be the place of conversion. Wulf had earlier been asked to name some
of the people to whom he had sold artifacts in "this area." He named three individuals and one
category of individuals. The category of individuals was persons who had bought artifacts from
him at his home in San Marcos, and one of the named individuals was "Buck" at Buck's Trading
Post in Wimberly. Although the record does not indicate where the other two named individuals
lived, the testimony indicates that "this area of Texas" was the place of conversion. Further, since
Wulf began as a hobbyist and then started a part-time business out of his home in San Marcos,
the primary basis for his expertise is centered around the place of conversion. See Stewart v.
Frazier, 461 S.W.2d 484, 487 (Tex. Civ. App.--Dallas 1970, no writ) (although words "Dallas,
Texas" did not appear in question or response, record as whole showed that discussion of values
related to values in Dallas); Cree v. Miller, 255 S.W.2d 565, 574 (Tex. Civ. App.--Eastland 1953,
writ ref'd n.r.e.) (market value established in Lamesa when witness who was in business in
Lamesa, and who had repaired and inspected truck in Lamesa, testified as to values "there");
Sherwin-Williams Co. of Texas v. Delahoussaye, 124 S.W.2d 870, 874 (Tex. Civ. App.--Fort
Worth 1939, no writ) (testimony regarding market value in "this locality" established market value
in City of Wichita Falls). (2) We conclude that Wulf's testimony as a whole indicates that Wulf
considered "this area" to be the place of conversion.

 


 3. Evidence relevant in measuring the market value of Indian artifacts at the place of
conversion


 Further, to the extent that "this area" refers to an area larger than the place of
conversion, the evidence would be relevant to establish market value at the place of conversion
since the evidence does not indicate that the market value of Indian artifacts in a more regional
area differs from the market value of Indian artifacts at the place of conversion. O'Donnell v.
Preston, 301 S.W.2d 288, 289 (Tex. Civ. App.--Fort Worth 1957, writ ref'd n.r.e.) (range as to
time and place to which evidence shall be confined depends on circumstances). The breadth of
the area within which market value at the place of conversion may be measured is determined by
the nature of the object converted. The value of items which are unique and stationary may need
to be measured in a small area. See, e.g., Peter Salpeter Energy Co., Inc. v. Crystal Oil Co., 524
S.W.2d 383, 386-87 (Tex. Civ. App.--Corpus Christi 1975, writ ref'd) (market value of converted
casing in ground must be proven as to value in ground). Conversely, the market value for other
types of personalty may be measured in a much broader area if the market for that type of
property is broader and more standardized. Shaw's D.B. & L., Inc. v. Fletcher, 580 S.W.2d 91,
96 (Tex. Civ. App.--Houston [1st Dist.] 1979, no writ) (market value of silverware in Houston
established by manufacturer's price list); Ellis, 154 S.W.2d at 294 (market value of used car in
Harlingen relevant to determine market value of used car in Mercedes).

 Wulf's testimony regarding Indian artifacts establishes that the value in a larger
area than the place of conversion would be relevant evidence to determine the value of Indian
artifacts at the place of conversion. Artifacts are bought and sold by hobbyists in a broad market
and are collector's items for which a widely published price guide is printed. See Shaw's D.B.
& L., Inc., 580 S.W.2d at 96; Ellis, 154 S.W.2d at 294. Further, the precise location in Texas
in which the goods are sold is not one of the factors that Wulf testified would affect the value of
the artifact. Nothing indicates that the price for which one could sell an artifact in a more regional
area would differ from the price for which one could sell an artifact in the place of conversion.



C. Time of Conversion

 Market value must be established at the time of conversion. Prewitt, 643 S.W.2d
at 123. Humes also objects that Wulf's testimony was not sufficiently limited in time because it
was not limited to the date of conversion, May 23, 1987. Wulf testified as to the price of Indian
artifacts in "1987." The span of time within which the value of the converted property must be
measured also turns on the nature of the object converted.

 The value of commodities or stocks may need to be established within days or
weeks of the actual conversion in a rapidly changing market. However, the time within which
to measure the market value of thousand-year-old Indian artifacts collected by hobbyists need not
be so compressed because the value of the artifacts is not subject to the same type of market flux. 
Chandler v. Mastercraft Dental Corp. of Tex., Inc., 739 S.W.2d 460, 469 (Tex. App.--Fort Worth
1987, writ denied) (market value of converted trade secrets established as of "October 1984");
Shaw's D.B. & L., Inc., 580 S.W.2d at 96 (market value of silverware converted on August 30,
1974 established in "August 1974" by reference to 1974 price guide); Taylor v. Gossett, 269 S.W.
230, 231 (Tex. Civ. App.--Dallas 1925, writ dism'd) (evidence of market value of garage year
before fire relevant in determining market value of garage immediately before fire). Similarly,
here, the evidence does not indicate that prices on May 23, 1987 would have differed from prices
throughout the year. (3) We conclude that Wulf's testimony is sufficient to establish the time of
conversion.



D. Other Arguments

 Humes argues that Wulf's testimony does not establish that he knew the meaning
of "market value." We disagree. Wulf testified that he had been buying and selling artifacts for
ten years, first as a hobby and then as a part-time business. He estimated that he had bought
approximately 600 points and sold the same number during that time. His testimony is sufficient
to establish that he knew the concept of market value. Bub Davis Packing Co. v ABC Rendering
Co. of San Antonio, Inc., 437 S.W.2d 634, 635 (Tex. Civ. App.--Austin 1969, no writ) (person
in business of selling similar equipment for six years competent to testify regarding its value).

 Humes' argument can also be read as protesting that counsel did not precisely
define market value before she propounded questions regarding the market value of the artifacts
to him. Market value is the amount that would be paid in cash by a willing buyer who desires to
buy, but who is not required to buy, to a willing seller who desires to sell, but who does not need
to sell. City of Pearland v. Alexander, 483 S.W.2d 244, 247 (Tex. 1972). Wulf testified as to
price for which a willing seller would have sold a particular artifact in 1987. The testimony is
sufficient to show that Wulf was testifying about the market value of the artifacts.

 Finally, Humes argues that Wulf's testimony is insufficient to support a verdict
because Wulf was testifying as to sales prices rather than fair market value. Humes cites no
authority for this argument, but she apparently confuses the testimony in this case with testimony
in cases in which market value is sought to be established exclusively with reference to a long-past
historical sales price. Wulf testified as to the price for which the artifacts would have sold for in
1987; that testimony is sufficient to establish market value at the time of conversion.

 For the above reasons, we hold that the evidence is legally sufficient to establish
market value at the time and place of conversion. We overrule points of error two and four.

 In points of error three, five and six, Humes challenges the factual sufficiency of
the evidence to support the jury's award of actual damages for conversion. When reviewing a
jury verdict to determine the factual sufficiency of the evidence, we must consider and weigh all
the evidence and should set aside the judgment only if the evidence is so weak as to be clearly
wrong and manifestly unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re King's
Estate, 244 S.W.2d 660, 661 (Tex. 1951); see also Pool v. Ford Motor Co., 715 S.W.2d 629
(Tex. 1986); Federal Deposit Ins. Corp. v. Golden Imports, Inc., 859 S.W.2d 635, 640 (Tex.
App.--Houston [1st Dist.] 1993, no writ). See generally William Powers, Jr. & Jack Ratliff,
Another Look at "No Evidence" and "Insufficient Evidence," 69 Tex. L. Rev. 515 (1991).

 Here, Humes did not offer any evidence to contradict Hallmark's evidence of the
market value of the property. Hallmark's evidence regarding the value of the artifacts is probative
and is sufficient to sustain the jury verdict. Having already held that the Hallmark's evidence is
legally sufficient to support the verdict, we hold that the evidence is not so weak as to be clearly
wrong and manifestly unjust. We overrule points of error three, five and six.



CONCLUSION


 We conclude from Wulf's testimony regarding the value of the artifacts that the
evidence is sufficient to support the verdict so we do not address Humes' arguments regarding
Hallmark's testimony as to the value of his household belongings and tools of trade. Further,
since the testimony established actual damages, the award of attorney's fees and punitive damages
is appropriate. The judgment of the trial court is affirmed.


Before Chief Justice Carroll, Justices Jones and Kidd

Affirmed

Filed: March 15, 1995

Publish

1.   Humes did not object to the testimony on the ground that it was unclear.
2.   We distinguish Ara v. Rutland, 215 S.W. 445 (Tex. Comm'n App.--1919, holding
approved), on the same basis as did the court in Sherwin-Williams Co. v. Delahoussaye, 124
S.W.2d 871, 874 (Tex. Civ. App.--Fort Worth 1939, no writ). The court in Ara had held that
it could not, in that case, infer that the testimony reflected market value in Victoria, Texas. 
Ara, 215 S.W. at 446. It appears that in Ara there was no evidence from which to infer the
area within which market value was established.
3.   Further, since the jury found the conversion was wilful, Humes would be liable for
the highest price between the date of conversion, May 23, 1987, and the time of filing
suit, January 15, 1988. See Cochran v. Wool Growers Cent. Storage Co., 166 S.W.2d 904,
907 (Tex. 1942); DeShazo v. Wool Growers Cent. Storage Co., 162 S.W.2d 401, 404 (Tex.
1942). We are then concerned with the period from January 1, 1987 to May 23, 1987. There
is no evidence that the price would have changed in that five-month period.